## Grutski, Appellant, v. Kline.

Argued May 22, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William T. Connor,* with him *John R. K. Scott* and *Hardie Scott,* for appellants.

*Desmond J. McTighe,* with him *Fox & McTighe,* for appellee.

OPINION BY MR. JUSTICE DREW, June 29, 1945:

In the instant cases Walter Grutski and Helen Grutski, his wife, brought suit to recover damages, she for personal injuries sustained by her, and he for loss sustained by him as a result of her injuries; and Stephen J. Zywicki, as Administrator of the Estate of Boleslaus J. Zywicki, brought suit to recover damages for the death of his intestate, Boleslaus J. Zywicki. The cases were submitted to a jury and resulted in verdicts for defendant, Elwood Kline. After motions for a new trial were overruled and judgments entered, these appeals were taken.

On October 16, 1943, at about 6:45 P. M., Reverend Boleslaus J. Zywicki, was driving his automobile east on High Street, in the business section of Pottstown, when it ran directly into the rear of a large trailer, owned by defendant, which was parked on the street. As a result of the collision, Father Zywicki was killed,

Rose Shalek, who was riding with him on the front seat of the automobile, was also killed, and Helen Grutski, a passenger riding in the back seat, was seriously and permanently injured.

About noon of that same day, while defendant's tractor with trailer attached, was being driven along High Street, the tractor got out of repair, and the driver parked the trailer against the curb and took the tractor to Reading for repairs. High Street is fifty-two feet wide between curbs, and is a six-lane concrete highway. The trailer extended six feet out into the highway and had no flags, lights or flares about or upon it. The roadway was dry and the weather clear. One witness for plaintiffs testified it was "just getting dark" and another said "it was dark enough for lights". The automobile ran into the rear of the trailer when, according to the testimony of Mrs. Grutski, the speed of the automobile was about twenty to twenty-five miles per hour. It was testified further on plaintiff's side that on the rear of the trailer were three large clean reflectors which were visible four hundred feet back of the trailer.

The learned trial judge in his opinion for the court below said: "The evidence clearly proved the contributory negligence of Father Zywicki; indeed if he had survived this tragic accident, we would have been compelled to find him guilty of negligence, as a matter of law". A close examination of the record has brought us to the same conclusion. There was nothing to prevent him from seeing and avoiding the huge trailer. In addition, there were the reflectors upon the rear of the trailer, which the lights of his car illuminated from a distance of four hundred feet as he drove toward the trailer, and which he could not have failed to see if he had been looking. And further, if there had been no reflectors, the lights upon his car, would have shown him, if he had been looking, the trailer on the road before him, and if he had his car under control, as was

his duty, he would have driven into the next traffic lane and passed the trailer without any difficulty.

The law of this case is similar to that of *Basel v. Pittsburgh,* 350 Pa. 545, 39 A. 2d 582, in which we said: "The facts of this case so clearly show the negligence of decedent, that they destroy the presumption of due care, and the court below should have found decedent guilty of contributory negligence as a matter of law." We also said in that case: "While ordinarily, where a person has been accidentally killed, the law will presume that he had taken all necessary precautions to assure his own safety, that presumption has no existence as against the certainty that if he had acted more carefully in a particular instance he would not then have died: *Stark v. Fullerton T. Co.* [318 Pa. 541, 179 A. 84]." The evidence in the instant case, when viewed in the light most advantageous to plaintiff, clearly establishes the contributory negligence of Father Zywicki and it is necessary for us to so declare it as a matter of law. His administrator is not entitled to the presumption of due care being given conclusive effect: *Shepherd, Admrx., v. Philadelphia,* 279 Pa. 333, 123 A. 790. Granting the motion for a compulsory nonsuit would have been proper.

In the other cases Helen Grutski was a passenger in the car. She was riding in the rear seat and did not participate in the slightest in the driving of the car. There is nothing in the record to show that she saw, or had time to see, the impending danger. The testimony shows that she was injured through no fault of her own, and the jury could well have concluded that she did not contribute in any way to the happening of the accident and that she and her husband were entitled to recover. The first assignment of error, suggests as a reason for the jury's having found against her, that it was misled by trial errors, and we are convinced this may be so.

Two witnesses for defendant, Doctor A. M. Ornsteen and Doctor G. E. McGinnis, in the course of the

trial, were asked by counsel for plaintiffs what compensation they were receiving, and the learned court sustained an objection to the question. These witnesses not only testified on the medical side of the case, but gave evidence upon the merits of the case. They testified that plaintiff, Helen Grutski, who stated the car was being operated at a speed of twenty to twenty-five miles an hour immediately before the accident, had told them that she was asleep at the time of the accident and knew nothing concerning the happening.

Later in the trial, having been satisfied that the ruling on the admission of the evidence was erroneous, the learned trial judge permitted, without the witnesses who had been interrogated being called, counsel for the defendant to make the following statement in the record, over objection, "I state for the record that I have no definite arrangement with either doctor as to payment of any specific sum for their appearance in court to testify as expert witnesses, but I do expect to receive for them, and to pay them, a fee as expert witnesses in excess of the usual witness fee as allowed by law, in the sum of two or three dollars, and in a reasonable amount". Counsel for plaintiff then informed the court that he would rather have the doctors give their own testimony so he could examine them, but his objection was overruled and an exception granted.

That plaintiffs were entitled to show the jury what compensation the doctors were receiving is unquestioned because their arrangements could have been such as to affect their credibility as witnesses, not only on the medical side of the case, but on the merits as well, and this has been definitely decided.

In *Duffy v. Griffith*, 134 Pa. Superior Ct. 447, 4 A. 2d 170, counsel for plaintiff said " 'And I am asking permission to ask the witness a question as to how much he is being paid for coming here to testify' ". The court replied: " 'That is none of your affair' " and refused to allow the doctor to answer the question. In holding

that the action of the trial judge was reversible error, the learned Superior Court said: "The question directed to this witness did not constitute an attack on his reputation, nor was the question improper or unethical. It was competent. 'Whatever tends to show the interest or feeling of a witness in a cause is competent by way of cross examination': *Commonwealth v. Farrell*, 187 Pa. 408, at page 423, 41 A. 382. The attitude of the trial judge created an impression which the jury would naturally reflect. In *Shannon v. Castner*, 21 Pa. Superior Ct. 294, at page 322, this court, in an opinion by President Judge RICE, said: 'The fact that an expert witness is to receive, or has received, per diem compensation beyond the legal witness fee does not affect his competency as a witness, and it may have very slight bearing upon the question of his impartiality. Nevertheless, his relation to the party calling him may be 'such as to warrant the jury in taking it into consideration in weighing his testimony.'

"It was not proper for the trial judge to refuse to permit inquiry within reasonable limits as to the amount of the witnesses' compensation for testifying for the defense as a medical expert. 'It may be shown, as bearing on the credibility of a witness and the care with which his evidence should be considered, that he has been paid an amount in excess of the regular witness fees . . . While the testimony of an expert whose relations to the case are purely professional should not be discredited merely because he received compensation for such testimony, yet the credibility of such a witness is affected by the fact that he was employed and paid by one of the parties for the purpose of investigating and examining into questions of physical or mental condition, etc., for the purpose of testifying with respect thereto': 70 C. J. §1158, pp. 954, 955."

In *Commonwealth v. Farrell*, supra, in which case a reversal of judgment was had and a new trial granted, we held to the same effect.

It was pertinent for the jury to know what arrangements the doctors had made or were contemplating making for compensation for their services in the case and the trial judge's refusal to require them to testify under oath, and subject to cross examination, constituted substantial error which makes necessary the granting of a new trial. In this situation we need not consider the other alleged trial errors.

In the case of *Zywicki, Admr., v. Kline* (No. 103), judgment affirmed; in the case of *Grutski v. Kline* (Nos. 101 and 102), judgment reversed and a new trial granted.