**Olga E. McNENAR, Plaintiff,**

v.

**NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, a corporation, Defendant.**

**William PELTZ, Plaintiff,**

v.

**NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, a corporation, Defendant.**

**Civ. A. 12202, 12558.**

United States District Court
W. D. Pennsylvania.
June 20, 1957.

4. 6 Moore, Federal Practice, p. 2349.

James P. McArdle, Pittsburgh, Pa., for plaintiffs.

Earl F. Reed, of Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

These are actions under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., in which the same problem is presented in each cause of action. The questions for determination relate to the scope and latitude of interrogatories allowable in taking the deposition of an intended medical witness by written interrogatories. Rules 26 and 31 of Federal Rules of Civil Procedure, 28 U.S.C.

Defendant has directed eleven questions or interrogatories to an expert medical witness who has examined and/or treated the plaintiff which relate to the circumstances under which the doctor first treated or examined the plaintiff, his past relationship with the law firm representing the plaintiff, and his relation generally over a four year period with individuals who are injured, bring actions for damages and have the doctor testify in behalf of the plaintiff in said actions.

The question before the court arises on a motion for a Protective Order filed on behalf of the expert medical witness by counsel for the plaintiff in which it is claimed the information sought to be elicited will subject the medical witness to professional harassment, embarrassment and oppression, and that the information desired is irrelevant and improper to the issues to be adjudicated.

It must be realized that the range of external circumstances from which probably bias or prejudice may be inferred is infinite, and exact concrete rules are almost impossible to formulate and, if possible, should be avoided.

However, I must determine, as tested by the experience of human nature, will the information sought to be elicited from the medical witness aid the court and jury in evaluating the credibility of said expert witness without unduly prolonging the trial on purely collateral matters.

The interrogatories appear to pose a question of first impression as far as the Federal Courts are concerned. As early as 1881 the Supreme Court of Pennsylvania has held that a witness could not be interrogated as to the number of cases that he had testified against a certain defendant with the view to showing bias or prejudice. Pennsylvania & N. Y. Canal and R. Co. v. Roberts, 2 Walker 482. The Supreme Court of Pennsylvania has ruled that earnings or the relationship of an expert witness with a litigant over a period of years with matters other than the one at trial raise a purely collateral matter and such testimony is not admissible to affect the credibility of an expert witness. Zamsky v. Pittsburgh Pub. Parking Auth., 378 Pa. 38, 105 A.2d 335. This view is given further credence by the Supreme Court of California. Muriro v. Reinhart Lumber Co., 85 Cal.App. 385, 259 P. 494.

However, Wigmore believes the conclusions reached in Zamsky v. Pittsburgh Pub. Parking Auth., supra, are not sound and that the testimony should have been admitted for the purpose of evaluating the witness's testimony. Wigmore on Evidence, Vol. 3, Supplement, 3rd Ed., Section 949.

The eleven questions cannot be considered as a whole since I believe some proper and others irrelevant. Consideration will be given on the basis of two classifications:

(a) The first five.

(b) Numbers six to eleven inclusive.

(a) The first five are as follows:

1. Did you have occasion to examine the plaintiff herein?

2. If your answer to the preceding interrogatory is in the affirmative, state whether or not said plaintiff was referred to you by another physician or by counsel in this case, James P. McArdle,

Esquire, or any one associated with him in his law office, or otherwise.

3. If your answer to interrogatory No. 1 is in the affirmative, state the number and dates of such examinations.

4. If your answer to interrogatory No. 1 is in the affirmative, state whether or not at the time of such examination or examinations, you had been informed or had knowledge of the fact that she was the plaintiff in this suit.

5. If your answer to interrogatory No. 1 is in the affirmative, state the purpose of such examination, whether for medical treatment or for the purpose of testifying as a medical expert in this case or both.

Concerned as we are with a proper and equitable balance between the duty of making material information available for probing into the credibility of a professional witness on the one hand and the dangerous pitfall of raising extraneous issues and collateral matter which would unduly prolong and confuse the issue in litigation on the other, I have given most thorough study and research to the questions propounded.

■ Certainly whether or not plaintiff was referred to the medical witness by his counsel, whether he selected the medical witness by his own efforts, or whether an attending physician referred plaintiff to the medical witness, the number of examinations he conducted, whether or not he knew that litigation was pending at the time the examinations were made, whether or not said examinations were made with the view of medical treatment or solely for the purpose of testifying as a medical witness— are pertinent questions which are relevant and germane toward eliciting pertinent information on the issue of credibility.

■ Nor is it to be disputed that the court in its discretion may allow counsel to cross-examine an expert witness as to the amount he has received, is to receive, or expects to receive for treat-

ment, examination or testifying, for such information has a possible bearing upon the witness's impartiality, credibility and interest in the result. Grutski v. Kline, 352 Pa. 401, 43 A.2d 142; Commonwealth v. Simmons, 361 Pa. 391, 65 A.2d 353; Duffy v. Griffith, 134 Pa. Super. 447, 4 A.2d 170; 70 C.J. 1158, pages 954, 955.

(b) Interrogatories six through eleven pose the further range of external circumstances from which the defendant most earnestly argues bias may be inferred.

Interrogatories six through eleven are as follows:

6. State whether or not you have made such examinations of other parties litigant over the past four years for the purpose of testifying in court as a medical expert.

7. If your answer to the preceding interrogatory is in the affirmative, state the number of cases in which you have made medical examinations over the past four years for the purpose of testifying in court.

8. State in how many of such cases you actually testified in court as a medical expert.

9. If you have given a number of cases in which you have made such medical examination, state the number of such cases in which James P. McArdle, Esquire, or any of his associates, was legal counsel for the party or parties examined.

10. State whether or not over the past four years you have made such medical examinations for the purpose of testifying as a medical expert for other litigants represented by counsel other than James P. McArdle, Esquire, or his associates, claiming damages for injuries.

11. If your answer to the preceding question is in the affirmative, state approximately how many such examinations you have made for other counsel over the past four years and approxi-

mately the number of cases in which you have given testimony as a medical expert for other counsel over the said period.

■ To permit this type of inquiry or cross-examination of a medical witness, the information elicited should have some clearly apparent force, as tested by experience of human nature, or, as it is usually put, the information should not be too remote. Wigmore on Evidence, Vol. 3, 3rd Ed., Section 949, page 499.

Cognizant of the broad liberal discovery procedure in vogue in the United States Courts, I have always believed that no evidence which is relevant should be excluded, so long as its admission will not unduly distract the attention of the jury from the main inquiry. I must, therefore, determine in the first instance, in the exercise of sound judicial discretion, whether evidence which though logically relevant on the ultimate issue, may nevertheless be excluded because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues or by unduly prolonging the trial. Thompson v. American Steel & Wire Co., 317 Pa. 7, 175 A. 541.

An impelling factor, to which the court as a practical necessity must give some weight, is the added contingency of a working relationship between the medical and legal professions. Expert medical witnesses who presently are engaged in wide and varied practices, whose time is highly limited and burdened with the treatment and care of waiting patients, should not be unduly abused and harassed by counsel for either side. In the field of negligence and Federal Employers' Liability Act litigation, both plaintiffs and defendants depend largely upon expert medical testimony. This dependence requires an attitude of mutual respect on the part of both lawyer and doctor.

To subject members of the medical profession to interrogatories requiring long and arduous perusal of records dating back to previous years, on matters of a collateral nature, and in no way related to diagnosis and treatment of the patient in question, in my judgment, will create an antipathy between the professions which may materially jeopardize the administration of justice.

Parenthetically, in this connection, I have always felt that in order to establish a working and cohesive relationship between the bar and the medical profession, the establishment of Codes of Ethics for the two professions in litigation matters should be effectuated by the adoption of an interprofessional code of conduct and practice.

■ I do not believe that a physician should be required to delve into his past records in an attempt to ascertain the number of medical examinations which he made for the purpose of testifying in court. Not only would this requirement constitute an unreasonable imposition from the standpoint of time and effort consumed, but the answer to such interrogatory undoubtedly would open avenues to collateral attacks as to credibility which would result in the trial of the testifying physician, beclouding and obscuring the primary issues.

■ I cannot recognize the propriety of an inquiry, whether through the discovery processes or through the cross-examination of a medical witness, which would direct a doctor to state the number of litigants examined or treated by said medical witness for an attorney or a law firm within the last four years. I believe such a conclusion sound whether said medical witness examined or treated the litigant at the litigant's request, plaintiff's counsel, the defendant or defendant's counsel, since such inquiry is far too broad and extensive, productive of collateral issues and obstructing the expeditious administration of justice.

Inquiry as to whether or not over the past four years the medical witness has made medical examinations for the pur-

pose of testifying as a medical expert for other litigants represented by counsel other than the one involved in the instant proceeding, even more flagrantly demonstrates the collateral spheres to which such discovery must inevitably lead. Thus, the subsequent interrogatory seeks to elicit the number of such examinations made for other counsel over the past four years and the number of cases in which the medical witness had given testimony as a medical expert for other counsel over the same period.

It is apparent that subjecting a physician to such line of inquiry would not only make him subject to searching and gruelling examination as to the purpose and nature of every medical examination he has conducted in past years and require the possible production of records and other medical data, but would pose further controversy as to the credibility and completeness of records maintained. I can visualize numerous instances when a physician is unaware of pending litigation at the time a history is secured and is not alerted to appear in court until a brief period before trial. In such instances, a physician's records may not reflect information of pending litigation, and in the course of such interrogation may cause embarrassment and impugn credibility through no fault of the physician himself. No physician should be required to maintain his records with the view of scrutiny and examination in the heat and conflict of the courtroom on matters unrelated to the litigant involved.

I must, therefore, conclude that plaintiff's motion for Protective Order as to Interrogatories 1, 2, 3, 4 and 5 will be refused. Plaintiff's motion for Protective Order as to Interrogatories 6, 7, 8, 9, 10 and 11 will be granted.

An appropriate Order is entered.