In the Matter of **COMPUDYNE CORPORATION**, Debtor.

No. 27824.

United States District Court
E. D. Pennsylvania.
June 27, 1966.

11. Comm.Rep., sheet 19.

12. An approach forbidden by United States v. Carolina Carriers Corp., 315 U.S. 475, 483, 62 S.Ct. 722, 86 L.Ed. 971 (1942).

Louis J. Goffman, Philadelphia, Pa., for CompuDyne.

Jay D. Barsky, Philadelphia, Pa., for Regan-Acme.

## OPINION AND ORDER SUR MOTIONS CONCERNING AWARD OF ARBITRATOR

JOHN W. LORD, Jr., District Judge.

The present cross motions relate to an award of arbitrator dated April 21, 1966 against Regan Construction Co., Inc. ("Regan") and Acme Missiles and Construction Corporation ("Acme") and in favor of CompuDyne Corporation ("CompuDyne") in the amount of $147,651.28. CompuDyne (noted in the above caption as Debtor) has moved to confirm the award, and Regan and Acme have moved to set it aside.

The arbitration was held pursuant to a Stipulation entered into by the parties and approved by this Court on July 18, 1963. Paragraph 9 of the Stipulation is set out in the Findings of Fact which follow. As will be seen, it related to unreimbursed expenses, and provided that if the parties were unable to agree, the matter should be submitted to arbitration in a certain specified way.

It has not been asserted that the reference to arbitration was unauthorized or otherwise improper. The reasons which Regan and Acme assign in support of their motion to set aside the award may be summarized as follows:

The arbitrator refused to hear material and relevant evidence on two subjects:

(1) the determination of costs on a prior joint venture, and (2) the alleged admissions of one Tecosky. As a result, it is alleged the arbitrator failed to give Regan and Acme a full and fair hearing. Thus they were denied due process—it is argued—and the arbitrator was guilty of *misconduct* in the sense to which that term applies to the conduct of arbitration hearings.

The circumstances and details of the foregoing contentions will be developed hereafter. Meanwhile, in lieu of further preliminaries, the following matters and things will be stated as

## FINDINGS OF FACT

1. CompuDyne Corporation ("CompuDyne") is a Pennsylvania corporation having its principal office and place of business at 1965 Pioneer Road, Huntingdon Valley, Pennsylvania.

2. Acme Missiles and Construction Corporation ("Acme") is a Delaware corporation, having its principal office and place of business at 43 North Village Avenue, Rockville Center, New York.

3. C. W. Regan, Inc., also known as Regan Construction Co., Inc. ("Regan") is a New York corporation having its principal office and place of business at 327 Hewes Street, Brooklyn, New York.

4. On July 18, 1963, a written Stipulation was entered into by CompuDyne, Regan and Acme and approved by this Court. Notice is taken of the fact that a copy thereof was made a part of the records of this Court at that time.

5. Paragraph 9 of said Stipulation provides:

"9. The parties shall attempt forthwith to mutually agree on the figures to be used in computing 'unreimbursed expenses' as defined in Paragraph 2. If the parties are unable to mutually agree by August 15, 1963, then the dispute shall be submitted to Lybrand, Ross Bros. and Montgomery as an arbitrator, whose decision shall be binding upon the parties. The arbitrator so named shall use, as his standards for determining (a) proper expenses in-

curred by the Debtor as attributable to this project and (b) whether expenses incurred by the Debtor should be charged as a joint venture expense or as a managerial expense, those standards which are normally used by joint venturers and managers on such projects."

6. On April 15, 1965, after hearing and argument on CompuDyne's Motion to Compel Arbitration, this Court directed Acme and Regan to submit immediately the matter in controversy to Lybrand, Ross Bros. and Montgomery and to proceed with the arbitration proceedings with all reasonable dispatch in accordance with the Stipulation.

7. Hearings were held in the offices of Lybrand, Ross Bros. and Montgomery before Glenn O. Petty, a member of the firm, and Burton L. Tacke, a manager on the accounting staff of the firm, with morning and afternoon sessions on November 8, 9, 23, 24 and December 1 and 2, 1965, and with an evening session on November 23, 1965.

8. On April 21, 1966, the arbitrator made a 34 page report finding for CompuDyne in the amount of $147,651.28, which report was thereafter filed with the Court and served upon the parties.

9. Paragraph 7 of the Stipulation provides:

"7. If the new manager and/or the joint venture is successful in obtaining from the Government a special claim or change order for additional managerial expenses, this fund will also be used as hereinafter set forth to pay the Debtor's 'unreimbursed expenses.' As, if and when such funds are received from the Government, Acme and Regan shall immediately pay over fifty percent (50%) thereof to the Debtor on account of such 'unreimbursed expenses.'"

10. In 1964 Regan and Acme were successful in obtaining from the Government and receiving payment of a special claim or change order for additional managerial expenses in the amount of $495,973.00.

11. In 1965 Regan and Acme were successful in obtaining from the Government and receiving payment of a special claim or change order for additional managerial expenses in the amount of $264,000.00.

12. Regan and Acme have refused and still refuse to make any payment whatsoever on account of CompuDyne's unreimbursed expenses, despite the arbitrator's determination (Finding of Fact No. 8, supra) that CompuDyne's unreimbursed managerial expenses are $147,651.28; and despite the circumstances recited in Findings Nos. 10 and 11 supra whereby Regan and Acme received payments of additional managerial expenses from the Government in the total amount of $759,973.00.

13. It is undisputed that in the course of the 6 morning sessions and the 7 afternoon or evening sessions before the arbitrator (Finding No. 7, supra) many exhibits were received and 1092 pages of testimony were taken.

14. On November 24, 1965, the third day of the hearings before the arbitrator, counsel for Regan and Acme attempted to elicit testimony concerning the management by Regan of a joint venture between Regan and CompuDyne known as the Lunar Landing Project. Pursuant to objection by counsel for CompuDyne, and after extensive argument, the arbitrator sustained the objection for reasons set forth in his Report, p. 26. (Hereafter cited as "Report")

15. Both parties testified as to conversations with one Lawrence Tecosky, identified as "an executive vice-president of CompuDyne and a systems engineer * * * chief architect of the joint venture insofar as CompuDyne was concerned." (Report 20)

16. Tecosky refused to testify unless subpoenaed, and neither CompuDyne nor Regan—Acme elected to obtain a subpoena. (Report 20)

17. The arbitrator "decided to eliminate all of this hearsay testimony in the consideration of the case." That is to say, the testimony of both parties as to

out of court statements of Tecosky (see Finding 15, supra) was stricken and not taken into account by the arbitrator. (Report 20–21)

18. The total CompuDyne claim at the outset of arbitration had been $194,091.40. The arbitrator's award of $147,651.28 was the result of determinations that certain items were not "proper" managerial expenses (Report 4):

| | |
|---|---|
| Challenged by Regan-Acme and conceded by CompuDyne . . . | $23,673.96 |
| Challenged by Regan-Acme and disallowed by arbitrator . . . . | 22,766.16 |
| Total disallowances . . . | $46,440.12 |

19. The remainder, after the claim for $194,091.40 had been reduced by $46,440.12, amounted to $147,651.28, which the arbitrator awarded as "proper" managerial expenses, being the same as the "unreimbursed expenses" described in paragraphs 2, 6, 7, 8 and 9 of the Stipulation. (Report 4)

## DISCUSSION

The contentions of Regan and Acme have already been stated. They will be considered separately:

(a) *Exclusion of testimony as to another project.*

On this subject the arbitrator wrote as follows (Report 26):

"8. *Standards Normally Used by Joint Ventures*

"At the arbitration hearings on November 24, 1965, Regan-Acme attempted to introduce evidence concerning the methods used by Regan-Acme in determining managerial costs under the 'Lunar Landing Project,' another joint venture with CompuDyne. The purpose of this testimony was to illustrate 'those standards which are normally used by joint venturers and managers on such projects' to which reference is made in paragraph 10 of the stipulation. CompuDyne objected to the introduction of this evidence contending that to do so would require extensive inquiry and investigation of the scope and nature of the 'Lunar Landing Project' to determine its comparability or lack of comparability with the conditions of the Mark I project. In the alternative, CompuDyne agreed that the best illustration of managerial standards of accounting should be found in the procedures followed by Regan-Acme in managing the Mark I project after July 15, 1963. Regan-Acme opposed the introduction of that evidence. The arbitrator decided not to receive testimony on the management accounting for either the Mark I project after July 15, 1963 or the 'Lunar Landing Project.' Both CompuDyne and Regan-Acme took exception to the ruling of the arbitrator. In the opinion of the arbitrator, the position taken by CompuDyne on the offered testimony about the 'Lunar Landing Project' was valid. Also, the arbitrator believes the Regan-Acme procedures in the Mark I project were irrelevant. Neither of those offers of testimony would have aided in determining 'those standards which are normally used by joint venturers and managers on such projects,' the test to be used by the arbitrator pursuant to paragraph 9 of the Stipulation. At most, they would have shown what standards Regan-Acme used in two projects and would have prolonged the arbitration, pointlessly, by a study of Regan-Acme procedures which were not an issue in the arbitration." (Report 26)

Now Regan-Acme attack that exclusion as a denial of a full and fair hearing; denial of due process; and coupled with the exclusion of Tecosky hearsay, misconduct on the part of the arbitrator.

The quoted page speaks for itself. The reasoned conclusion of the arbitrator is at the opposite pole from the sort of arbitrary and capricious conduct which denies due process. To the contrary, an appealing aura of fairness emanates from the occurrence and its outcome. Regan-Acme wanted to establish the "Lunar Landing" transaction as a standard of comparison, but CompuDyne claimed that the "Mark I" transaction

(after June 15, 1963) would make a better yardstick. Rather than prolonging the proceedings with proof of cost-handling in those instances, together with evidence as to their similarities and dissimilarities to the matter at hand, the arbitrator kept out all. This is a ruling any court was entitled to make. Thompson v. American Steel & Wire Company, 317 Pa. 7, 11, 175 A. 541 (1934); Keough v. Republic Fuel & Burner Co., Inc., 382 Pa. 593, 596, 116 A.2d 671 (1955); Young v. Upper Yoder Township School District, 383 Pa. 320, 324, 118 A.2d 440 (1955); Burch v. Reading Company, 140 F.Supp. 136 [cases collected at 147] (E.D.Pa.1956); McNenar v. New York, Chicago and St. Louis R. Co., 20 F.R.D. 598, 601 (W.D.Pa.1957).

■ The relevancy and materiality of similar happenings and transactions is a familiar branch of the law of evidence. 2 Wigmore, Evidence, § 377 (3d Ed. 1940); McCormick, Evidence, § 165. The consensus of the cases and authorities is that a court must in each case weigh the probative value of testimony as to other transactions with the risk of waste of time and confusion of issues.

■ The arbitrator should be allowed no less freedom than a court of law. In fact, the general principle is that the award of an arbitrator will not be set aside for a mere error of law. Raytheon Co. v. Rheem Mfg. Co., 322 F.2d 173, 182 (9th Cir. 1963). Mere errors on points of evidence have never been considered adequate grounds for the vacation of an award. Textile Workers Union of America, AFL–CIO Local Union v. American Thread Co., 291 F.2d 894, 896 (4th Cir. 1961).

It seems almost unnecessary to add that the recent trend in the courts has been increasingly favorable to arbitration. Miller v. Allstate Insurance Company, 238 F.Supp. 565 (W.D.Pa.1965). Furthermore, courts have shown the greatest hesitancy in upsetting an arbitration award, and have held that an award should stand unless it is made abundantly clear that it was obtained through "corruption, fraud, or undue means."

General Construction Co. v. Hering Realty Co., 201 F.Supp. 487 (E.D.S.C.1962, appeal dismissed, 312 F.2d 538 (5th Cir. 1963)).

■ Far from finding clear corruption and so forth, this Court is not even inclined to disagree with the arbitrator's exclusion—although such agreement is by no means necessary to the integrity of the arbitrator's award. But it is noticeable that the record before the arbitrator was certainly long enough (1092 pages, Finding 13, supra) even without the testimony as to "Lunar Landing" and "Mark I" projects. Admission of "Lunar Landing" would have opened the door to testimony as to "Mark I", and the hearings might have been inordinately prolonged.

Cases cited by Regan-Acme have been read, but do not change the foregoing conclusions. If McLaurin v. McLauchlin, 215 F. 345 (4th Cir., 1944) is contra, it must be remembered that most of the rules of arbitration have developed since 1921, and the authority of that 1914 case must be deemed eroded by the change of law that has taken place in the last 52 years.

The remaining ground on which the arbitrator's award is assailed is his

(b) *Exclusion of the Tecosky Admissions*

Reference to Mr. Tecosky has heretofore been made in Findings Nos. 15, 16 and 17. The following additional facts will aid understanding of the instant problem.

J. Lawrence Tecosky was executive vice president of CompuDyne and chief negotiator for CompuDyne of the Joint Venture Agreement dated January 26, 1962, between CompuDyne, Regan and Acme. He left CompuDyne's employ not later than November, 1962.

On *November 23, 1965*, during the pendency of the arbitration hearings, representatives of Regan and Acme had a conversation with Mr. Tecosky in which he supposedly made certain statements *adverse* to CompuDyne's position in the arbitration, and they testified to that

conversation at the hearing on November 24, 1965. On November 24 and November 28, 1965, attorneys for CompuDyne had discussions with Mr. Tecosky during which he allegedly made statements *favorable* to CompuDyne's position. These conversations were introduced at the hearing on December 1, 1965.

Two pages of the Arbitrator's Report are devoted to discussion of this testimony. (Report 20, 21) After consideration and reconsideration, the arbitrator reached the following conclusion:

"Conflicts in hearsay evidence presented by CompuDyne and Regan-Acme cause doubts about it. It is quite possible that Tecosky made the same statements to Feldman as to Nager but with different shades of meaning which resulted in different interpretation by the parties. Under the circumstances, the arbitrator has decided to eliminate all of this hearsay testimony in the consideration of the case." (Report 21)

The foregoing statement by the arbitrator contains in itself many of the reasons for the rule against hearsay. The admission of a party opponent is, of course, admissible as an exception to the hearsay rule. Tecosky, however, was not an authorized agent of CompuDyne at the time of the alleged declaration. McCormick on Evidence, § 244, pp. 517 ff (1954); 31A C.J.S. Evidence § 347, p. 847. Obviously he did not make the statements in the course of his employment—since he was not employed by CompuDyne at the time in question. Moreover, his statements were ambiguous or equivocal—and the several statements were alleged to be contradictory.

At the very least, it can be said with great certainty that the arbitrator did not abuse his powers, or fail to exercise discretion, in deciding to eliminate the various reports of what Tecosky was said to have said.

## CONCLUSIONS OF LAW

1. The arbitrator gave both parties a full and fair hearing at the arbitration which he conducted as recited in Findings of Fact Numbers 7 and 8, supra.

2. There was no denial of due process in the conduct of that hearing, nor in the report or award made pursuant thereto. Finding of Fact No. 8.

3. The arbitrator was guilty of no misconduct in connection therewith.

4. The arbitrator's award was made in accordance with the terms of the submission to arbitration.

Now therefore, for all the foregoing reasons, it is the ruling of this Court that the Motion of Regan and Acme to Vacate Arbitrator's Award is denied;

And the Motion of CompuDyne to Confirm the Arbitrator's Award is granted;

And therefore it is the further ruling of this Court that, in accordance with the said arbitrator's award of April 21, 1966, the said C. W. Regan, Inc. and Acme Missiles and Construction Corporation shall pay to CompuDyne Corporation forthwith the sum of $147,651.28;

And it is so ordered.