Redevelopment Authority of the County of Bucks, Appellant, *v.* Augustine G. Asta, Nardine Asta, John V. Asta and Benjamin D. Asta, Appellees.

Argued October 11, 1974, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three.

*Edward C. Connolly,* with him *Connolly, McAndrews, Kihm & Stevens,* for appellant.

*David H. Moskowitz,* with him *Weiss, Nelson & Moskowitz, for appellees.*

OPINION BY JUDGE KRAMER, December 5, 1974:

This is an appeal filed by the Redevelopment Authority of the County of Bucks (Authority) from an order of the Court of Common Pleas of Bucks County, dated January 21, 1974, granting a new trial to Augustine G. Asta, Nardine Asta, John V. Asta and Benjamin D. Asta (Asta), the condemnees in an eminent domain case.

On August 18, 1969, the Authority filed a declaration of taking which included among other properties, thirteen properties owned by Asta. Some of the Asta properties were contiguous, and all were located within one block of each other in an area of Bristol Borough which had been declared blighted. On February 23, 1971, Asta filed a petition for the appointment of a Board of View, which was granted on the following day. After hearing, the Board of View awarded damages in the amount of $84,700, together with damages for delay on that amount from August 18, 1969 to November 24, 1969 (the date on which $51,200 was paid on account) and damages for delay thereafter on the remaining balance to the date of payment.

The Authority filed an appeal to the court below on February 23, 1972.[1] Prior to trial before the lower court, the parties entered into a stipulation in which, among other things, $3,500 was agreed to be just compensation for one of the 13 Asta properties. During the trial, the jury was taken to the subject properties for a view of the buildings not yet demolished. The jury also was given photographs of all of the buildings showing their general appearance at the time of the taking. A real estate appraiser for the condemnees testified that $130,000 was the fair market value of the remaining 12

---

[1] Although the opinion of the court below states that both the Authority and Asta filed appeals, the record certified to this Court including the Prothonotary's docket entries indicates that Asta did not file an appeal from the award of the Board of View.

pieces of property, and a real estate appraiser for the Authority valued the properties at $57,500. The jury returned a verdict in the amount of $58,500, which, together with the stipulated $3,500 resulted in a total verdict of $62,000.

Following the verdict, Asta filed a motion for a new trial which raised 17 issues. Four of these were briefed and argued before a three-judge panel of the lower court. On January 21, 1974, the court below issued its order granting a new trial. No opinion was written at the time the order was issued. On February 7, 1974, the Authority filed its appeal with this Court and, thereafter, on March 11, 1974, the lower court issued its opinion in support of the order granting a new trial. The opinion of the court below states that three of the four grounds presented by Asta for a new trial were without merit, but that a new trial should be awarded because the court determined that it had erred by refusing to permit counsel for Asta to cross-examine the Authority's expert witness concerning the fees which that witness had been paid for his appraisal work relating to the 12 properties in question.

In its appeal to this Court, the Authority raises only the issue concerning the court's determination that it had erred in prohibiting the cross-examination mentioned above. Although Asta did not take an appeal to this Court, Asta attempts to raise the three additional issues it raised before the court below, but which were determined by that court to be without merit. Only the Authority appealed from the order of the court below, and the lower court's sole reason for granting a new trial was that it had erred by prohibiting the above-mentioned cross-examination. We agree with the Authority that the prohibited cross-examination is the only issue before this Court.

In *Redevelopment Authority of the City of Philadelphia v. United Novelty & Premium Co., Inc.*, 11 Pa. Com-

monwealth Ct. 216, 314 A. 2d 553 (1973), we noted that the grant of a new trial is within the sound discretion of the trial judge, but that his discretion is not absolute. We will review the action of the court below and will reverse if we determine that the lower court acted capriciously or palpably abused its discretion.. In reviewing the grant or refusal of a new trial to determine whether there has been a palpable abuse of discretion, we must view all of the evidence in the record. *See Austin v. Ridge,* 435 Pa. 1, 255 A. 2d 123 (1969); *United Novelty, supra.*

The lower court, in this case, granted a new trial because it believed that it erred by refusing to allow the Authority's expert witness to be cross-examined concerning the fee he would be paid for his testimony. The attempted cross-examination concerning fees was as follows: "Q. Would you tell us, please, what your fee has been for appraising these properties involved in the Urban Renewal Project? MR. CONNOLLY: Objection. THE COURT: What is the basis of the question? MR. MOSKOWITZ: I think the Jury is always entitled to know what the fees of an expert witness are. THE COURT: What is the basis of the objection? MR. CONNOLLY: I don't think that is relevant to the case involved. I don't know how that has any bearing. Obviously he is a witness who is called to testify. Obviously he should be paid fair compensation. THE COURT: I will sustain that objection, but you may ask him whether or not he has— there are any fees that he has been paid or is dependent upon his testimony. MR. MOSKOWITZ: Well, that's not the question that I would ask. Let me ask that question in more specific terms. BY MR. MOSKOWITZ: Q. What has your fee been, Mr. Minyoni, for appraising the twelve properties about which you testified today? MR. CONNOLLY: Objection, again, Your Honor. THE COURT: I will sustain that on the same basis."

Anyone familiar with trial practice in eminent domain cases knows that attorneys will cross-examine real estate appraisers testifying as expert witnesses in an attempt to impeach their credibility. Any bias or partisanship on the part of such a witness is relevant evidence and is a proper subject for cross-examination. The amount of compensation paid to expert witnesses may have a definite effect upon their credibility. This is especially true if the fees paid to such a witness are based upon any interest the witness may have in the case. If the expert witness's fee is in any way related to the size of the verdict or the number of properties involved, then the jury is entitled to consider that relationship in weighing the expert's testimony. In *Grutski v. Kline*, 352 Pa. 401, 43 A. 2d 142 (1945), two medical expert witnesses had been asked on cross-examination about the fees they were receiving, and the lower court in that case had sustained an objection (the same as in this case). The Supreme Court stated:

"That plaintiffs were entitled to show the jury what compensation the doctors were receiving is unquestioned because their arrangements could have been such as to affect their credibility as witnesses, not only on the medical side of the case, but on the merits as well, and this has been definitely decided." 352 Pa. at 405, 43 A. 2d at 144.

" 'Whatever tends to show the interest or feeling of a witness in a cause is competent by way of cross examination' . . . 'The fact that an expert witness is to receive, or has received, per diem compensation beyond the legal witness fee does not affect his competency as a witness, and it may have very slight bearing upon the question of his impartiality. Nevertheless, his relation to the party calling him may be such as to warrant the jury in taking it into consideration in weighing his testimony." (Citations omitted.) 352 Pa. at 406, 43 A. 2d at 144.

"It was pertinent for the jury to know what arrangements the doctors had made or were contemplating making for compensation for their services in the case and the trial judge's refusal to require them to testify under oath, and subject to cross examination, constituted substantial error which makes necessary the granting of a new trial." 352 Pa. at 407, 43 A. 2d at 144. *See Profit-Sharing Blue Stamp Company v. Urban Redevelopment Authority*, 429 Pa. 396, 241 A. 2d 116 (1968) ; *Zamsky v. Pittsburgh Public Parking Authority*, 378 Pa. 38, 105 A. 2d 335 (1954). In *Reed v. Philadelphia Transportation Co.*, 171 Pa. Superior Ct. 60, 90 A. 2d 371 (1952), a medical expert testified that no arrangements had been made concerning his fee and the trial court sustained an objection to a question as to how much the expert expected to be paid for testifying. On appeal, the Superior Court held that this was reversible error, stating: "The amount of an expert's fees, whether stipulated in advance to a trial or determinable in the future, has a direct and vital bearing upon his credibility, his interest, bias, or partisanship, and the rule of the Grutski and cognate cases should be liberally applied." 171 Pa. Superior Ct. at 65, 90 A. 2d at 373. The lower court in this case was clearly correct in determining that it had erred by prohibiting cross-examination of the Authority's expert concerning his fee.

The Authority argues here, as it did before the court below, that the questions asked of its expert witness on cross-examination were misleading. Our review of the record, including the questions as quoted above, permits us to conclude that there is no merit to the Authority's contention in this regard. The Authority also argues that even if the denial of the opportunity to cross-examine as to the subject fees was in error, it constituted harmless error. This also has little merit. We agree with the court below that while we have no

way of knowing what effect such cross-examination of this expert witness may have had on the jury, we cannot ignore the fact that the jury's verdict is very close ($1,000 higher) to the Authority's witness' testimony. In the lower court's opinion the trial judge stated that he believed the jury's verdict indicated that it was impressed with the Authority's witness, sans the prohibited cross-examination which could have developed some question as to credibility. Because the decision to grant the new trial is within the discretion of the trial court, and because the trial judge heard the witness testify and saw the jury's reaction to that testimony, we believe that the trial judge's observation on this point is entitled to great weight.

In summary, we hold that the lower court quite correctly determined that it erred by prohibiting cross-examination concerning the Authority's expert fees and that the lower court did not commit a manifest abuse of discretion or an error of law when it granted the new trial. The order of the lower court is affirmed.