J-A21020-18

2019 PA Super 5

JOHN F. BROWN, JR., ESQUIRE          :       IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
                                     :
                                     :
             v.                      :
                                     :
                                     :
                                     :
MARK S. HALPERN, ESQUIRE,            :
HALPERN & LEVY, P.C. AND LYNNE       :
BOGHOSSIAN                           :       No. 1496 EDA 2017
                                     :
                                     :
APPEAL OF: MARK S. HALPERN,          :
ESQUIRE, AND HALPERN & LEVY,         :
P.C.                                 :

                 Appeal from the Judgment Entered May 5, 2017
               In the Court of Common Pleas of Philadelphia County
               Civil Division at No(s):  June Term, 2013 No. 01428

JOHN F. BROWN, JR., ESQUIRE          :       IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
                                     :
                                     :
             v.                      :
                                     :
                                     :
                                     :
MARK S. HALPERN, ESQUIRE,            :
HALPERN & LEVY, P.C. AND LYNNE       :
BOGHOSSIAN                           :       No. 1714 EDA 2017
                                     :
                                     :
APPEAL OF: LYNNE BOGHOSSIAN          :

                 Appeal from the Judgment Entered May 5, 2017
               In the Court of Common Pleas of Philadelphia County
               Civil Division at No(s):  June Term, 2013 No. 01428


BEFORE:  PANELLA, J., OLSON, J., and McLAUGHLIN, J.

OPINION BY OLSON, J.:                         **FILED JANUARY 04, 2019**

**I. Introduction**

Mark S. Halpern, Esquire ("Halpern"), Halpern & Levy P.C. ("the Firm"), and Lynne Boghossian ("Boghossian" and, together with Halpern and the Firm, "Appellants") appeal from the May 5, 2017 judgment entered in favor of John F. Brown, Esquire ("Plaintiff") in an action filed by Plaintiff under the Dragonetti Act.[1]  After careful consideration, we affirm.

**A. Underlying Facts**

Plaintiff was previously married to Leslie Brown ("Brown").  Brown is Boghossian's sister.  Brown's and Boghossian's aunt, Hilda Kilijian ("Kilijian"), was wealthy.  Kilijian added Boghossian's name to certain stock certificates she held.  Thereafter, Kilijian asked Boghossian to remove her name from the stock certificates.  Boghossian refused and, eventually, Boghossian and Kilijian agreed to a 50/50 split of the stock certificates.  Kilijian placed her remaining assets in an irrevocable trust.  Brown and Kilijian were named trustees of the irrevocable trust.  The trust documents provided that the entire trust would pass to Brown and her issue upon Kilijian's death.

**B. Underlying Lawsuit**

The procedural history relating to this Dragonetti action begins with an underlying lawsuit involving the same parties.  On January 8, 2009, Boghossian, through Halpern and the Firm, filed the underlying lawsuit in the

---

[1] 42 Pa.C.S.A. §§ 8351-8355.

Court of Common Pleas of Delaware County against Plaintiff, Brown, and Kilijian.[2] The case was later transferred to the Court of Common Pleas of Montgomery County. The premise of the lawsuit was that Kilijian intended to leave Boghossian her estate until Plaintiff and Brown intervened. The underlying lawsuit accused Plaintiff of conversion, tortious interference with contractual relations, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Boghossian, through Halpern and the Firm, filed an amended complaint. Plaintiff, who is admitted to practice law in Pennsylvania, sent Halpern letters detailing why the lawsuit violated the Dragonetti Act.

On September 30, 2011, Boghossian, through Halpern and the Firm, filed a second amended complaint. The second amended complained added the irrevocable trust as a defendant. When depositions were scheduled in the underlying lawsuit, Halpern attempted to delay proceedings. Plaintiff moved for judgment on the pleadings. Boghossian, through Halpern and the Firm, did not file a response to Plaintiff's motion for judgment of the pleadings and

---

[2] In addition to the underlying lawsuit, in 2009 Boghossian, through Halpern and the Firm, instituted three additional actions: guardianship proceedings, accounting proceedings, and competency proceedings in orphan's court. The orphan's court used the competency proceedings as the vehicle through which to adjudicate those three cases. It issued commissions and at least three depositions, including depositions of Kilijian's trust attorney, banker, and investment advisor, were taken in Florida as part of the competency proceedings. The orphan's court eventually determined that Kilijian was competent to create the irrevocable trust.

instead filed a praecipe to discontinue the claims against Plaintiff, Brown, and Kilijian. On January 31, 2013, the Court of Common Pleas of Montgomery County dismissed the claims against Plaintiff, Brown, and Kilijian with prejudice. On October 10, 2013, the Court of Common Pleas of Montgomery County granted summary judgment to the irrevocable trust. This Court affirmed and our Supreme Court denied allowance of appeal. *In re Hilda Kilijian Irrevocable Tr.*, 116 A.3d 639, 2014 WL 10750741 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 116 A.3d 605 (Pa. 2014).

### C. Procedural History

On June 11, 2013, Plaintiff instituted this litigation by filing a complaint against Appellants under the Dragonetti Act. On April 24, 2014, the trial court ordered Appellants to answer Plaintiff's requests for discovery. Appellants appealed and this Court affirmed. *Brown v. Halpern*, 120 A.3d 1062, 2015 WL 7455920 (Pa. Super. 2015) (unpublished memorandum).

On September 1, 2016, Halpern and the Firm filed a motion *in limine* seeking to exclude the expert testimony of Attorney George Bochetto ("Bochetto"). The trial court denied that motion prior to trial. *Voir dire* was scheduled to commence on September 16, 2016. Halpern, who was representing himself and the Firm, did not appear for *voir dire*. On September 19, 2016, the trial commenced in the morning at which time another attorney for the Firm requested a continuance and showed the trial court an email from Halpern stating that he was ill and unable to attend the proceedings. The trial

court did not continue the proceedings and trial began without Halpern present.

At trial, Appellants objected to a reference in Plaintiff's counsel's closing argument to a potential damages calculation and the trial court responded by issuing a cautionary instruction. Appellants never requested a mistrial or other relief. On September 30, 2016, the jury returned a verdict in favor of Plaintiff and against Appellants. The jury awarded Plaintiff $250,000.00 in compensatory damages and apportioned 65% of the liability to Halpern and the Firm and 35% of the liability to Boghossian. The jury also awarded $1,750,000 in punitive damages against Halpern and the Firm and $300,000.00 against Boghossian. Hence, it awarded Plaintiff a total of $2,300,000.00 in compensatory and punitive damages.

Appellants filed post-trial motions. Appellants argued, for the first time in their post-trial motions, that the trial court erred by admonishing Boghossian's counsel while the jury was present. The trial court denied Appellants' post-trial motions and entered judgment in favor of Plaintiff and against Appellants on May 5, 2017. These timely appeals followed and this Court consolidated the appeals.[3]

**D. Questions Presented**

Combined, Appellants present ten issues for our review:

---

[3] Appellants and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

1. Whether the trial court erred in permitting [Plaintiff to pursue] a Dragonetti Act [c]laim for punitive damages against [Halpern and the Firm] and then refusing to strike the punitive damages award against [Halpern and the Firm] as being unconstitutional as to attorneys[?]

2. Whether the trial court erred in failing to grant a new trial due to [Plaintiff's] counsel's improper suggestion to the jury during closing argument that it award $2,000,000[.00] in damages[?]

3. Whether the trial [c]ourt erred when it failed to order a new trial as a result of the prejudice [Appellants] suffered by the trial [court]'s improper admonishment of Boghossian's counsel in front of the jury[?]

4. Whether the trial court erred and abused its discretion when it denied [Halpern and the Firm's r]equest for [a c]ontinuance of the [t]rial due to the emergency unavailability of [Halpern], lead trial counsel and a party defendant, who was suffering from a serious health issue[?]

5. Whether the trial court erred by [] deciding as a matter of law that the [underlying lawsuit terminated] in [Plaintiff's] favor[?]

6. Whether the trial court erred when it failed to enter [judgment *non obstante veredicto* ("JNOV")] or grant a new trial when it was undisputed at trial that Boghossian relied upon [Halpern's] advice that she had a valid and viable claim against [Plaintiff] in the [underlying lawsuit?]

7. Whether the trial court erred in permitting [Bochetto], a witness with a long history of bias against [Halpern and the Firm], from testifying as an expert and then permitting him to present testimony that was both perjurious and based almost entirely upon facts not of record, based upon inadmissible hearsay, or simply manufactured by Bochetto[?]

8. Whether the trial court erred by permitting [Plaintiff's] expert to base expert opinion on hearsay statements made by persons not present at trial or otherwise subject to cross-examination [] where the hearsay statements were offered for the truth of the matter asserted[?]

9. Whether the trial court erred by [] permitting [Plaintiff] to testify at trial as to, and read into evidence, certain hearsay statements made by persons not present at trial or otherwise subject to cross-examination [] where the hearsay statements were offered for the truth of the matter asserted; [however,] precluding [Appellants] from introducing hearsay statements at trial . . . ?

10. Whether the trial court erred by [refusing to find] as a matter of law, that [Plaintiff] did not suffer damages from Boghossian's alleged conduct and by [refusing to reduce] the amount of the jury's award against Boghossian[?]

Boghossian's Brief at 3-4; Halpern's and the Firm's Brief at 5-6.[4]

## II. Waived Arguments

### A. Constitutionality of the Dragonetti Act

Halpern and the Firm argue that the Dragonetti Act is unconstitutional to the extent that it subjects attorneys to punitive damages. This argument is waived. Pennsylvania Rule of Appellate Procedure 521 provides that:

It shall be the duty of a party who draws in question the constitutionality of any statute in any matter in an appellate court to which the Commonwealth or any officer thereof, acting in his official capacity, is not a party, upon the filing of the record, or as soon thereafter as the question is raised in the appellate court, to give immediate notice in writing to the Attorney General of Pennsylvania of the existence of the question; together with a copy of the pleadings or other portion of the record raising the issue, and to file proof of service of such notice.

_____

[4] We have combined and renumbered the issues for ease of disposition.

Pa.R.A.P. 521. Halpern and the Firm did not file a proof of service with this Court evidencing their compliance with Rule 521.[5] Accordingly, their constitutional challenge is waived. **See Fotopoulos v. Fotopoulos**, 185 A.3d 1047, 1055 (Pa. Super. 2018).[6]

**B. Plaintiff's Counsel's Closing Argument**

Appellants argue that the trial court erred by not declaring a mistrial after Plaintiff's counsel's closing argument. At trial, Plaintiff's counsel argued that, "You folks have to consider the damages to [Plaintiff]. And I would submit that your springboard for this, if they thought it important enough to do this, to get [$2,000,000.00] from [Kilijian] and [] Halpern strip a $650,000.[00] fee. That is where you start." N.T., 9/29/16, at 52.

_____

[5] Compliance with Rule 521 is only required where a party makes a facial challenge to the constitutionality of a statute. **Pollock v. Nat'l Football League**, 171 A.3d 773, 783 (Pa. Super. 2017), *appeal denied*, 181 A.3d 1074 (Pa. 2018) (citation omitted). In **Villani v. Seibert**, 159 A.3d 478 (Pa. 2017), our Supreme Court considered a challenge to the constitutionality of the Dragonetti Act to be a facial challenge. **Id.** at 480 n.2; **see also id.** at 494 n.2 (Baer, J. concurring) ("this case involves only a generalized challenge to the Dragonetti Act as applied to attorneys"). The party challenging the statute in **Villani** notified the Attorney General of the constitutional challenge. Halpern and the Firm facially challenge the constitutionality of 42 Pa.C.S.A. § 8353(6). Hence, as noted in **Villani**, they were required to comply with Rule 521.

[6] Halpern attempted to file the notice "*nunc pro tunc*" after a decision was announced in this case. This attempt at preservation fails for two reasons. First, this Court struck the filing. Second, even if the filing were not struck, there is no case law, rules, or other legal authority for such a filing preserving the issue.

This argument is waived. It is well-settled that issues raised for the first time in a post-trial motion are waived. ***E.S. Mgmt. v. Yingkai Gao***, 176 A.3d 859, 864 (Pa. Super. 2017). After Plaintiff's counsel's closing argument, Boghossian's counsel argued that

> During [Plaintiff's counsel's] clos[ing argument], when he was talking about the emotional distress and reputational damage, he suggested to the jury that you start with $2 million.
>
> That's inappropriate. He cannot suggest to the jury a number. That's for the jury to determine. **And I believe that the Court needs to address that issue when we begin again**.

N.T., 9/29/16, at 58-59 (emphasis added). The trial court responded that it would give a cautionary instruction. ***Id.*** at 59. Boghossian's counsel responded, "Thank you." ***Id.*** He did not request a mistrial and he did not object to the remedy chosen by the trial court.

When the jury returned after lunch, the trial court gave the cautionary instruction. ***Id.*** at 61. Again, Boghossian's counsel did not object to this cautionary instruction.[7] ***See id.*** As such, the first time Appellants sought a mistrial based on Plaintiff's counsel's closing argument was in their post-trial motions. Accordingly, they waived this issue.

### C. Admonishment of Boghossian's Counsel During Trial

---

[7] Halpern's and the Firm's counsel never objected to this portion of Plaintiff's counsel's closing argument nor did they object to the remedy the trial court chose.

Appellants argue that the trial court erred in admonishing Boghossian's counsel during trial. Despite a careful review of the record, we have not located an objection or filing which raised this issue before post-trial motions. We are unaware of case law directly addressing what is necessary to preserve this type of issue for appellate review. After careful review, we hold that raising the admonishment of counsel for the first time in a post-trial motion is insufficient to preserve the issue for appellate review.

Pennsylvania Rule of Civil Procedure 227.1 provides that "post-trial relief may not be granted unless the grounds therefor, (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof[,] or other appropriate method at trial[.]" Pa.R.C.P. 227.1(b)(1). We find instructive this Court's interpretation of Rule 227.1 in **Croyle v. Dellape**, 832 A.2d 466 (Pa. Super. 2003). In that case, a judge recused after a bench trial but prior to rendering a verdict. After a replacement jurist was assigned, the appellants did not request a new trial, which they were entitled to under Pennsylvania law. **Cf. Labyoda v. Stine**, 441 A.2d 379, 380 (Pa. Super. 1982), *citing* **Hyman v. Borock**, 235 A.2d 621, 622 (Pa. Super. 1967) (trial court serving as replacement fact-finder may not issue factual findings with respect to testimony given before a different trial judge if a party objects to that procedure). After the replacement judge rendered a verdict, the appellants filed a post-trial motion seeking a new trial.

- 10 -

This Court found the issue waived because of the appellants' failure to raise the issue when the replacement judge was assigned the case. *See Croyle*, 832 A.2d at 473.[8] This Court reasoned that Rule 227.1(b)(1) prohibited granting relief on the appellants' claim because of the failure to request a new trial when the replacement judge was assigned to the case. *See id.* Hence, the issue was waived for purposes of appellate review under Pennsylvania law.

The same is true of the situation presented in this case. Appellants were aware of the trial court's admonishment of Boghossian's counsel and did not raise the issue during trial. They could have moved for a mistrial, moved for recusal, or requested a curative instruction. Instead, they waited until trial was complete and the jury returned a verdict in Plaintiff's favor to challenge the trial court's admonishment of Boghossian's counsel. Rule 227.1 prohibited the trial court from granting Appellants relief on this aspect of the post-trial motions.

This finding of waiver is consistent with the purpose of post-trial motions. This Court has explained that the purpose of Rule 227.1 "is to provide the trial court the first opportunity to review and reconsider its earlier rulings and correct its own error." *Chalkey v. Roush*, 757 A.2d 972, 975 (Pa. Super. 2000) (*en banc*), *aff'd*, 805 A.2d 491 (Pa. 2002) (cleaned up). In

---

[8] The appellants knew that the replacement judge planned to rule based on the cold record. *See Croyle*, 832 A.2d at 473-474 (citation omitted).

this case, Appellants never gave the trial court an opportunity to make an earlier ruling. Thus, permitting Appellants to preserve their claim of error by raising it for the first time in their post-trial motions would frustrate the purpose of Rule 227.1. Accordingly, we hold that Appellants waived this issue by raising it for the first time in their post-trial motions.

## III. Preserved Arguments

### A. Continuance Request

Halpern and the Firm argue that the trial court erred in denying their request for a continuance. Halpern and the Firm contend that Halpern was so ill on the morning trial began that he was unable to appear. They argue that one of the Firm's attorneys showed an email, evidencing Halpern's illness, to the trial court when requesting a continuance on the morning of trial. We review a trial court's decision to deny a continuance for an abuse of discretion. ***Rutyna v. Schweers***, 177 A.3d 927, 933 (Pa. Super. 2018) (citation omitted).

The trial court did not abuse its discretion in denying Halpern's and the Firm's motion for a continuance. First, Halpern and the Firm failed to comply with Pennsylvania Rule of Civil Procedure 216(A)(2). That rule provides that a continuance may be granted because of "[i]llness of counsel of record, a material witness, or a party. If requested a certificate of a physician shall be furnished, stating that such illness will probably be of sufficient duration to prevent the ill person from participating in the trial[.]" Pa.R.C.P. 216(A)(2).

Halpern and the Firm provided a certificate of a doctor. That certificate, however, was only for *voir dire* and it did not state that the illness would be of sufficient duration to prevent him from participating in trial. **See** Halpern's and the Firm's Brief in Support of Post-Trial Motion, 12/29/16, at Exhibit C (certifying that, three days prior to trial, Halpern was to see a specialist).

Halpern and the Firm argue that the trial court did not request such a doctor's certification pursuant to Rule 216. This argument, however, is waived. It is axiomatic that an appellant is responsible for ensuring the certified record is complete for appellate review. **Commonwealth v. Williams**, 176 A.3d 298, 320 n.9 (Pa. Super. 2017), *appeal denied*, 187 A.3d 908 (Pa. 2018) (citation omitted). Halpern and the Firm failed to ensure that a court reporter was present for *voir dire*. Moreover, Halpern and the Firm did not prepare and file a statement in absence of transcript pursuant to Pennsylvania Rule of Appellate Procedure 1923. The only facts included in the certified record are that *voir dire* occurred on Friday, Halpern and the Firm forwarded the doctor's note to the trial court on Sunday, and that trial began on Monday. **See** N.T., 9/19/16, at 6. Based on the record before us, we cannot conclude, as Halpern and the Firm suggest, that the trial court did not request a doctor's certification pursuant to Rule 216.

Moreover, even if we overlooked the lack of a factual record to support Halpern's and the Firm's argument, we would conclude that the trial court did not abuse its discretion by denying the continuance request. This was a

complex case that took two weeks to try to a jury. Plaintiff, his counsel, and his witnesses cleared their schedules for this trial and then, on the morning of *voir dire*, Halpern allegedly became unavailable for the entire two week trial. Notably, Halpern had similar ailments very recently but did not request a continuance at that point. **See** N.T., 9/19/16, at 6. Instead, Halpern and the Firm requested the continuance on the morning of trial. **See id.**

Halpern and the Firm also misapprehend the law with respect to the trial court's obligation once Halpern and the Firm requested a continuance. Our Supreme Court has explained that

> the burden is upon the party requesting a continuance to support that request; **the trial court does not have an obligation to** assume that the request must be granted, and then **probe the party** . . . **for support for the request**, or to find weaknesses in the request. This is particularly so if the trial court—which has the advantage of familiarity with the case and its history, and of observing in person the [person] requesting a continuance . . . believes that further delay is the real reason for a day-of-trial request[.]

**Commonwealth v. Brooks**, 104 A.3d 466, 477 (Pa. 2014) (emphasis added). Hence, the trial court did not have an obligation to probe counsel regarding the factors weighing in favor of, or against, a continuance. Instead, it was counsel's obligation to make a record as to each of those factors and why those factors weighed in favor of granting the requested continuance. Counsel failed in this respect. **See** N.T., 9/19/16, at 6-8. Counsel merely stated that he received an email informing him that Halpern was ill and would not be attending trial that morning. **See id.** Counsel did not explain how or

- 14 -

why the relevant factors weighed in favor of granting the request. Moreover, and importantly, the attorney representing Halpern and the Firm stated that he "was prepared for trial." N.T., 9/26/16, at 331.[9]

The trial court found that counsel's failure to make a compelling argument for a continuance, the requirements of managing its docket, and Halpern's past conduct in seeking to unnecessarily delay the proceedings, weighed against granting a continuance. This was consistent with well-established precedent from our Supreme Court. *See Brooks*, 104 A.3d at 477. We conclude that this decision by the trial court was not an abuse of discretion.[10]

### B. Termination of Underlying Lawsuit in Plaintiff's Favor

A party is liable under the Dragonetti Act if that party:

takes part in the procurement, initiation or continuation of civil proceedings against another [and]

---

[9] We note that, after the trial court denied Halpern's and the Firm's continuance request, it permitted the parties to depose Halpern while he was in bed at home. Halpern, however, declined this invitation and conducted the deposition at his office, without a break, for four and one-half hours. *See* N.T., 9/21/16, at 5, 219-220, 261. If he were capable of being questioned in his office for this length of time, it would seem that, at a minimum, he would have been capable of testifying in the courtroom during trial.

[10] To the extent that Halpern and the Firm argue that denial of their continuance request violated their constitutional right to be present at trial, this argument is waived. *See* Pa.R.A.P. 302(a). Similarly, to the extent Halpern and the Firm argue that the trial court erred by declining to give a requested jury instruction about Halpern's absence, this argument is waived. *See* Pa.R.A.P. 2116(a).

(1) [the party] acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; [and]

(2) [t]he proceedings have terminated in favor of the person against whom they are brought.

*Kit v. Mitchell*, 771 A.2d 814, 819 (Pa. Super. 2001), *appeal dismissed*, 842 A.2d 368 (Pa. 2004), *quoting* 42 Pa.C.S.A. § 8351(a). Appellants argue that the evidence was insufficient as a matter of law to prove that the underlying lawsuit terminated in Plaintiff's favor.[11] We review an argument that the evidence was insufficient as a matter of law *de novo* and our scope of review is plenary. *See Tong-Summerford v. Abington Mem'l Hosp.*, 190 A.3d 631, 659 (Pa. Super. 2018) (citation omitted). When reviewing the sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict winner, in this case Plaintiff. *Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 891 (Pa. Super. 2017).

As noted above, Boghossian, through Halpern and the Firm, filed a praecipe to discontinue her claims against Plaintiff in the underlying lawsuit after Plaintiff filed a motion for judgment on the pleadings. Appellants argue that this withdrawal of the claims against Plaintiff was not a favorable

---

[11] In their statement of questions presented, Appellants frame the issue as though the trial court made this determination as a matter of law. The record reflects, however, that the jury made a factual finding that the underlying lawsuit terminated in Plaintiff's favor. *See* Jury Verdict Form, 9/30/16, at 1.

- 16 -

termination of the underlying lawsuit in Plaintiff's favor as is required under the second element of the Dragonetti Act. Plaintiff argues that this withdrawal was a termination in his favor. "Generally, when considering the question of favorable termination in a [Dragonetti Act] case, whether a withdrawal or abandonment constitutes a favorable, final termination of the case . . . initially depends on the circumstances under which the proceedings are withdrawn." **Clausi v. Stuck**, 74 A.3d 242, 246 (Pa. Super. 2013) (cleaned up).

First, Appellants argue that the claims against Plaintiff were withdrawn because of a settlement with Plaintiff. **Cf. Elec. Lab. Supply Co. v. Cullen**, 712 A.2d 304, 311 (Pa. Super. 1998) ("settlement agreements are often not considered favorable termination for purposes of a [Dragonetti Act claim]"). This argument is based on a misrepresentation of the procedural history of this case. Plaintiff and Boghossian never entered into a settlement agreement. Instead, the record reflects that Halpern and the Firm, on behalf of Boghossian, spoke to Plaintiff's counsel regarding the litigation but never reached a settlement agreement. **See** Plaintiff's Memorandum of Law in Support of Plaintiff's Response in Opposition to Boghossian's Motion for Summary Judgment, 8/1/16, at Exhibit JJ. Accordingly, Appellants' argument that the claims against Plaintiff were withdrawn as a result of a settlement are without merit.

Alternatively, Appellants argue that they made a tactical decision to withdraw the claims against Plaintiff and their decision to withdraw the claims

was therefore not a favorable termination in Plaintiff's favor. As noted above, we must consider the circumstances under which Boghossian, through Halpern and the Firm, withdrew the claims to determine if the withdrawal were a favorable termination in favor of Plaintiff. *Clausi*, 74 A.3d at 246. Appellants argue that three circumstances indicate they withdrew the claims against Plaintiff for strategic reasons; *i.e.*, first, the increased cost associated with pursuing claims against Plaintiff, second, the obstructionist behavior by Plaintiff, and third, the prior rulings in favor of Boghossian. Appellants also rely on persuasive authority in support of their argument that Plaintiff did not receive a favorable termination in the underlying lawsuit for purposes of the Dragonetti Act. Our review of the record confirms that Halpern and the Firm, on behalf of Boghossian, chose to withdraw the claims against Plaintiff because they realized that continued litigation could subject them to liability under the Dragonetti Act. It was too late, however, to avoid liability under the Dragonetti Act as Boghossian, through Halpern and the Firm, maintained the action well after it became clear that it lacked a reasonable basis in fact and law. Hence, after carefully considering the totality of the circumstances surrounding each of these alleged strategic reasons for withdrawing the claims, we hold that Plaintiff received a favorable termination in the underlying lawsuit.

Appellants first argue that the increased costs associated with prosecuting the case against Plaintiff caused them to withdraw those claims.

The record belies this assertion. Boghossian, through Halpern and the Firm, did not seek to withdraw the claims against Plaintiff until four years after the underlying lawsuit was initiated. During this time, extensive discovery and motions practice occurred. At the conclusion of this period, Appellants already had absorbed the vast bulk of all expenses associated with their pursuit of claims against Plaintiff. Going forward, Boghossian, through Halpern and the Firm, could have litigated the claims against Plaintiff with relatively little additional cost beyond that incurred in pursuing claims against the irrevocable trust. The responses to motions for judgment on the pleadings, motions for summary judgment, and trial strategy would have been almost identical with respect to Plaintiff and the irrevocable trust. Appellants concede this point in their briefs to this Court. **See** Boghossian's Brief at 20; **see also** Halpern's and the Firm's Brief at 49. Hence, contrary to Appellants' argument, cost was not a compelling strategic factor leading to withdrawal of the claims against Plaintiff.

Appellants' argument that they voluntarily dismissed the claims because Plaintiff was being an obstructionist is also without merit. The record reflects that Plaintiff was not being more of an obstructionist than the irrevocable trust. **Cf. In re Hilda Kilijian Irrevocable Tr.**, 2014 WL 10750741 at *3 (emphasis added) (Boghossian "attempted to commence discovery by serving interrogatories but **none** of the defendants complied with her request."). Instead, the record reflects that the only thing that differentiated Plaintiff from

the other defendants in the underlying lawsuit was the fact that he was a respected trial attorney in the Philadelphia area and had warned Halpern and the Firm that continued litigation of the case on Boghossian's behalf would subject Appellants to liability under the Dragonetti Act.

Appellants also rely on the fact that the Court of Common Pleas of Montgomery County overruled Plaintiff's preliminary objections on two occasions in support of their argument that Plaintiff did not receive a favorable termination in the underlying lawsuit. This fact, however, is inapposite when considering whether the underlying lawsuit terminated in Plaintiff's favor. Preliminary objections, a motion for judgment on the pleadings, and a summary judgment motion are all pre-trial filings and the standard for sustaining preliminary objections or granting motions for judgment on the pleadings or summary judgment are different than that followed in decisions on the merits following trial. For example, summary judgment may be denied because there is a genuine issue of material fact and not because the underlying claims have merit. Thus, even if Plaintiff were unsuccessful at getting the case dismissed at the preliminary objection, judgment on the pleadings, and summary judgment stages, he could still have received a favorable termination if he prevailed at trial in the underlying lawsuit. Moreover, as noted above, the irrevocable trust was eventually granted summary judgment on almost identical claims to those brought against Plaintiff and this Court affirmed that determination.

Appellants also rely on the United States District Court for the Eastern District of Pennsylvania's decision in **Hyldahl v. Denlinger**, 124 F.Supp.3d 483 (E.D. Pa. 2015) in support of their argument that withdrawal of a claim under circumstances similar to this case does not constitute a favorable termination. **Hyldahl** is a well-reasoned decision that correctly states and applies Pennsylvania law with respect to favorable terminations under the Dragonetti Act. Nonetheless, we conclude that the factual scenario presented in that case differs in significant and material ways from the facts of this case.

In **Hyldahl**, Janet Denlinger and Endre Balazs previously brought arbitration proceedings against Christian Hyldahl and Morgan Stanley, a multibillion dollar financial services firm. Prior to the arbitration hearing, Denlinger and Balazs settled with Morgan Stanley. At the same time, Hyldahl informed Denlinger and Balazs that he was judgment proof and they would be unable to recover from him if they prevailed in the arbitration proceedings. Finally, Hyldahl implicitly threatened physical harm to Denlinger and Balazs. Eventually, Denlinger and Balazs withdrew their claims against Hyldahl and Hyldahl instituted Dragonetti Act proceedings. Denlinger and Balazs moved for summary judgment and, based on these surrounding facts, the United States District Court for the Eastern District of Pennsylvania held that withdrawing the request for arbitration was not a favorable termination in favor of Hyldahl. **Hyldahl**, 124 F.Supp.3d at 488-489.

There are three key factual differences between the facts in this case and the facts in **Hyldahl**. First, in **Hyldahl** the withdrawal of the claims completely ended the arbitration proceedings so there was a financial incentive to withdraw the claims against Hyldahl. In this case, Boghossian continued the litigation against the irrevocable trust and, as discussed above, there was little financial incentive for her to discontinue the case against Plaintiff while pursuing the claims against the irrevocable trust. Second, Plaintiff was a successful partner at a large Philadelphia law firm and there was no evidence presented that he was judgment proof. Hence, unlike in **Hyldahl**, where Hyldahl was judgment proof, Boghossian could have recovered if she prevailed against Plaintiff in the underlying lawsuit. Third, there is no evidence that Plaintiff ever physically threatened Boghossian, Halpern, or members of the Firm. Hence, the facts presented in **Hyldahl** are significantly different from the facts in this case as there were several non-substantive factors that led to the withdrawal of the claims against Hyldahl.

The jury (as fact-finder) was "free to believe all, part[,] or none of the" testimony presented by Appellants with respect to why they dropped the claims against Plaintiff. **Shaner v. Harriman**, 189 A.3d 1088, 1090 (Pa. Super. 2018) (citation omitted). In this case, the jury did not credit the testimony Appellants offered regarding the reasoning behind withdrawing the claims against Plaintiff. This factual finding by the jury was a reasonable decision based on the evidence presented at trial. Accordingly, for the reasons

set forth above, we hold that, when considering the totality of the circumstances, the evidence was sufficient to find that the underlying lawsuit terminated in Plaintiff's favor.

### C. Boghossian's JNOV and Weight of the Evidence Claims

In her statement of questions presented, Boghossian argues that the trial court erred in denying her motion for JNOV because she relied on Halpern's and the Firm's advice in pursuing the underlying lawsuit. **See** Boghossian's Brief at 4. In the argument section of her brief, however, she does not argue that the trial court erred with respect to the sufficiency of the evidence or that no reasonable jury could have returned a verdict in favor of Plaintiff. **Cf. Murray v. Janssen Pharm., Inc.**, 180 A.3d 1235, 1241 (Pa. Super. 2018) (stating the two reasons a trial court may grant JNOV). Instead, she only argues that the trial court erred in denying relief on her weight of the evidence claim. **See** Boghossian's Brief at 46-51. Hence, Boghossian waived any argument that the trial court erred in denying her motion for JNOV. **See** Pa.R.A.P. 2101, 2119(a).

Having determined that Boghossian only preserved her argument that the verdict was against the weight of the evidence (and she is entitled to a new trial), we turn to the merits of that argument. We review a trial court's ruling on a post-trial motion challenging the weight of the evidence for an abuse of discretion. **See Guntrum v. Citicorp Tr. Bank**, 2018 WL 4519813, *5 (Pa. Super. Sept. 21, 2018). A party is entitled to a new trial based on the

"weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. [A party] is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way." **Stapas v. Giant Eagle, Inc.**, 153 A.3d 353, 359 (Pa. Super. 2016), *appeal granted on other grounds*, 171 A.3d 1283 (Pa. 2017) (citation omitted); *see* **Miller v. St. Luke's Univ. Health Network**, 142 A.3d 884, 897 (Pa. Super. 2016), *appeal denied*, 164 A.3d 479 (Pa. 2016) (A Dragonetti Act verdict "will be upheld if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause.").

As noted above, in order to prove his Dragonetti Act claim against Boghossian, Plaintiff was required to show that Boghossian acted "in a grossly negligent manner or without probable cause[.]" **Kit**, 771 A.2d at 819, *quoting* 42 Pa.C.S.A. § 8351(a)(1). With respect to a litigant, such as Boghossian,

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if [s]he reasonably believes in the existence of the facts upon which the claim is based, and . . . believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within [her] knowledge and information[.]

42 Pa.C.S.A. § 8352(2). Hence, in order to find that Plaintiff satisfied his burden of proof with respect to Boghossian, the jury was required to find: (1) she did not reasonably believe in the existence of the facts on which the claims against Plaintiff were based; (2) she did not seek counsel from Halpern and

the Firm in good faith; or (3) she did not disclose all relevant facts within her knowledge to Halpern and the Firm.

Boghossian argues that the evidence was so weak with respect to this element of Plaintiff's case against her as to shock one's sense of justice. We conclude that the trial court did not abuse its discretion in finding that the jury's weighing of the evidence in this respect met the requisite standard. Based on Appellants' and neutral third-party witnesses' testimony, together with the documentary evidence presented at trial, a reasonable fact-finder could conclude that Boghossian lacked a reasonable belief in the facts on which the claims against Plaintiff were based.

Boghossian's theory in the underlying lawsuit was that Kilijian planned on bequeathing her a substantial part of her estate. One of the underlying facts that Boghossian relied on when filing the underlying lawsuit was that she had an amicable relationship with Kilijian. The evidence, however, showed that Boghossian was aware that this critical factual assumption was false. Specifically, contrary to the averments made in the underlying lawsuit, Boghossian admitted on cross-examination that she failed to disclose to Kilijian her second marriage. *See* N.T., 9/19/16, at 135-136.

After Plaintiff told Kilijian about Boghossian's second marriage, Boghossian forged her attorney's letterhead and signature on correspondence meant to allay Kilijian's fears about who would benefit from her inheritance. *See* N.T., 9/13/16, at 9 (Boghossian's attorney testifying that Boghossian lied

when she informed Halpern and the Firm that the letter bearing Boghossian's attorney's signature was authorized by Boghossian's attorney).  Boghossian sent this letter to Kilijian in an attempt to resolve the dispute that had arisen between the two.  In other words, Boghossian was aware that she harmed her relationship with Kilijian by failing to inform Kilijian of her second marriage and committed fraud and forgery in an attempt to repair the relationship.  Hence, one of the key premises of Boghossian's underlying lawsuit, that she had a great relationship with Kilijian, was knowingly false.  Boghossian could not have reasonably believed in the existence of a solid relationship with Kilijian, which was a critical factual component of her underlying lawsuit against Plaintiff.

Stock certificates titled jointly to Kilijian and Boghossian were a separate source of contention in the relationship between the two.  In May 2006, Kilijian twice sent letters to Boghossian demanding the return of her stock certificates.  Thereafter, Kilijian's attorney sent two letters to Boghossian's attorney demanding the same.  At this point, Boghossian's attorney realized that the only way the relationship between Kilijian and Boghossian could be salvaged was if Boghossian agreed to turn over the stock certificates.  **See** N.T., 9/13/16, at 20-21.  As noted in the factual recitation above, Boghossian still refused to turn over the stock certificates.  This led to a lengthy negotiation ending in the 50/50 split of the stock certificates.  Boghossian's concealment of her second marriage, together with her refusal to return the stock

certificates, gave the jury ample grounds upon which to conclude that Boghossian did not reasonably believe that she had a good relationship with Kilijian. Hence, the trial court did not err in finding that the jury's verdict in favor of Plaintiff did not shock it's sense of justice.

Boghossian's answer to Plaintiff's new matter in the underlying lawsuit further supported the jury's verdict. Boghossian admitted in her response to Plaintiff's new matter in the underlying lawsuit that she misled Kilijian about having an agreement with her second husband. *See* N.T., 9/20/16, at 49. Halpern testified that he was unaware that Boghossian forged her prior attorney's letterhead and signature and lied by stating that she had an agreement with her second husband. *See* N.T., 9/21/16, at 151. A reasonable fact-finder could construe Halpern's testimony as showing Boghossian did not reveal all relevant facts to her attorney prior to instituting the underlying lawsuit. This is a separate and independent ground on which the jury could have found against Boghossian. The trial court exercised reasonable discretion in concluding that such a finding did not shock its sense of justice.

There was overwhelming evidence supporting the jury's finding that Boghossian did not reasonably believe the facts supporting the underlying lawsuit. There was also evidence that Boghossian did not present all of the necessary facts to Halpern and the Firm. Hence, the trial court found that the jury's factual finding did not shock its sense of justice. Contrary to

Boghossian's assertions on appeal, her alleged reliance on Halpern's and the Firm's advice was immaterial because of these two factual findings. Accordingly, we conclude that the denial of Boghossian's post-trial motion based on the weight of the evidence was not an abuse of discretion. As Boghossian also waived her JNOV arguments for the reasons set forth above, she is not entitled to relief on this claim of error.

### D. Bochetto's Alleged Bias

Halpern and the Firm argue that Bochetto's expert testimony was inadmissible because of his alleged bias. In support of this argument, Halpern and the Firm misstate the law with respect to expert testimony. It is well-settled that we will only reverse a trial court's decision to qualify a witness as an expert if the trial court abused its discretion. ***See Commonwealth v. Powell***, 171 A.3d 294, 307 (Pa. Super. 2017), *appeal denied*, 183 A.3d 975 (Pa. 2018).

Pennsylvania Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.Evid. 702. Notably absent from the list of requirements for qualification of an expert witness is a requirement that the witness be unbiased.

Halpern and the Firm miscite cases in support of their argument that

[a] proffered witness who is personally biased or prejudiced against a defendant is not permitted to testify as an expert because it puts into question the integrity of the expert testimony and defeats the purpose of and need for an expert - to wit, to assist the fact -finder in understanding facts of record that require more specialized training and education.

Halpern's and the Firm's Brief at 38 (emphasis removed), *citing **Cooper v. Schoffstall***, 905 A.2d 482 (Pa. 2006) and ***Grutski v. Kline***, 43 A.2d 142 (Pa. 1945). ***Cooper*** did not address qualifications for an expert witness. Instead, our Supreme Court addressed what discovery was appropriate to enable a party to meaningfully cross-examine, *i.e.*, not disqualify, another party's expert witness. ***Cooper***, 905 A.2d at 493-496. The same is true of ***Grutski***. In that case, as in ***Cooper***, our Supreme Court explained why cross-examination and inquiry into an expert witness' potential bias is critical in our adversarial process. ***Grutski***, 43 A.2d at 144. In other words, both ***Cooper*** and ***Grutski*** stand for the proposition that, while bias may be a proper subject for cross-examination of an expert witness at trial, it is not grounds for excluding the testimony of the witness. Ultimately, a witness' alleged bias goes to his or her credibility, which the fact-finder must assess when deciding what weight to accord to the witness' testimony.

There are dozens, if not hundreds, of reported cases in Pennsylvania holding that the proper way to explore an expert witness' potential bias is

through cross-examination. *E.g., J.S. v. Whetzel*, 860 A.2d 1112, 1120 (Pa. Super. 2004), *citing* *Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614, 627 (Pa. Super. 1999); *Smith v. Celotex Corp.*, 564 A.2d 209, 213 (Pa. Super. 1989), *citing* *Grutski*, 43 A.2d 142. Halpern's and the Firm's argument that the trial court must act as the arbiter of the truthfulness of a witness is wholly frivolous.

Halpern and the Firm also argue that the trial court erred by admitting evidence relating to Bochetto's alleged bias. Specifically, they argue that the trial court erred by permitting Bochetto to testify that he had previously been asked to testify against Halpern in Dragonetti actions. Halpern and the Firm argue that this constituted hearsay evidence. Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted[.]" Pa.R.Evid. 801(c). Bochetto's testimony was not hearsay because it was not offered for the truth of the matter asserted. Instead, it was offered to explain how Bochetto was familiar with Halpern's work and address Bochetto's potential bias.

Halpern and the Firm also argue that the trial court erred by not holding an evidentiary hearing to determine if Bochetto perjured himself. This argument is also without. Halpern and the Firm essentially argue that there was after-discovered evidence, *i.e.*, that Bochetto lied when he stated that he had been asked to work on previous Dragonetti actions against Halpern. In

their brief, Halpern and the Firm state that they "first learned of Bochetto's testimony when [Halpern] reviewed the trial transcripts." Halpern's and the Firm's Brief at 18.

"After-discovered evidence, to justify a new trial, must have been discovered after the trial, be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result." **_Drake Mfg. Co., Inc. v. Polyflow, Inc._**, 109 A.3d 250, 262 (Pa. Super. 2015) (cleaned up). In this case, the fact that Bochetto was contacted in the past to testify against Halpern was learned **during** the trial and not after the trial. It is of no moment that Halpern did not learn of Bochetto's trial testimony until after the trial concluded and he reviewed the trial transcripts. Halpern and the Firm had counsel present during the trial who had an obligation to inquire as to the truth of Bochetto's testimony at the time it was elicited. Bochetto's statement that he had been contacted in the past to testify against Halpern does not qualify as after-discovered evidence and the trial court did not err in not holding an evidentiary hearing after the trial ended to determine the truth of Bochetto's testimony. Furthermore, the evidence only went to Bochetto's credibility. Hence, for two independent reasons the trial court correctly declined Halpern's and the Firm's request to hold an evidentiary hearing to determine the truthfulness of Bochetto's testimony.

### E. Bochetto's Reliance on Inadmissible Evidence

Appellants argue that the trial court erred by permitting Bochetto to rely on inadmissible hearsay when forming his expert opinion. This argument is without merit. Under Pennsylvania Rule of Evidence 703:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.Evid. 703.

Courts in Pennsylvania have long held that opinions based on inadmissible evidence, *e.g.* hearsay, are admissible. **E.g, Commonwealth v. Brown**, 139 A.3d 208, 218 (Pa. Super. 2016), *aff'd*, 185 A.3d 316 (Pa. 2018) (collecting cases). Hence, assuming *arguendo* that Bochetto relied on inadmissible hearsay evidence in forming his expert opinion, the trial court correctly concluded that such reliance did not bar Bochetto from offering those opinions.

### F. Plaintiff's Alleged Hearsay Testimony

Appellants argue that the trial court erred by permitting Plaintiff to offer hearsay testimony while barring their witnesses from offering hearsay testimony. "Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." **Renninger v. A & R Mach. Shop**, 163 A.3d 988, 996 (Pa. Super. 2017), *appeal denied*, 179 A.3d 7 (Pa. 2018) (citation omitted). At trial, Plaintiff was asked how he came to learn about a

certain letter. N.T., 9/27/16, at 21. Plaintiff answered the question and, at the end of that answer, stated that Kilijian told Brown that Boghossian was robbing her. *Id.* at 22. Counsel objected and the trial court instructed the jury that "you are not to consider this for the truth of the matter asserted but in regards to the context of how [Plaintiff] acted and what he did." *Id.* Thus, contrary to Appellants' assertions, the trial court did not permit Plaintiff to offer hearsay statements that Kilijian believed Boghossian was robbing her. The trial court specifically excluded this evidence and instead permitted the jury to consider the testimony for the limited purpose of explaining how Plaintiff learned of the letter. *Cf. Maya v. Johnson & Johnson*, 97 A.3d 1203, 1222 (Pa. Super. 2014), *appeal denied*, 112 A.3d 653 (Pa. 2015) ("The law presumes that the jury will follow the instructions of the court."). Viewed in this light, Plaintiff's testimony was not hearsay as it was not offered for the truth of the matter asserted but, instead, a limited purpose, *i.e.*, explaining how Plaintiff learned of the letter in question.

In an attempt to avoid this straight-forward application of settled law, Appellants argue that how Plaintiff learned of the letter was not relevant. This argument, however, is waived. In order to preserve a claim that the trial court erred in overruling an objection, a party must state the specific grounds of the objection. Pa.R.Evid. 103(a)(1)(B). In this case, Appellants only objected to Plaintiff's statement on the basis of hearsay. N.T., 9/27/16, at 22. They did not object on the basis of relevance. *See id.* Thus, Appellants waived their

argument that the evidence was inadmissible notwithstanding the trial court's instruction regarding the scope of the admission of the evidence. ***See*** Pa.R.A.P. 302(a); Pa.R.Evid. 103(a)(1)(B).

When Plaintiff was asked what he learned from the letter, he stated that "I called [Kilijian]. And I said, [Kilijian], here's what we've done, and I went through the transfer agents. And she immediately launched into a discussion of the 'babies' and 'biggies.' She said look, [Plaintiff.]" N.T., 9/27/16, at 28-29. Appellants objected and the trial court once again informed the jury that it could not consider Plaintiff's testimony for the truth of Kilijian's statement but could only consider it in relation to how Plaintiff acted. ***Id.*** at 29.

Again, contrary to Appellants' assertions, the trial court did not permit Plaintiff to offer hearsay statements that Kilijian discussed "babies and biggies." The trial court specifically excluded this evidence and instead permitted the jury to consider the testimony for the limited purpose of explaining what Plaintiff learned from the letter. Viewed in this light, Plaintiff's testimony was not hearsay as it was not offered for the truth of the matter asserted but was offered for another purpose, *i.e.*, explaining Plaintiff's actions.

Next, Appellants objected to Plaintiff stating that Boghossian told Brown to "stay out of [the dispute between herself and Kilijian.]" N.T., 9/28/16, at

35.[12]  We agree that the trial court abused its discretion by admitting this statement as it was offered for the truth of the matter asserted.  We thus turn to whether admission of this statement was harmless error.

"To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining.  An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the [fact-finder]'s judgment."  ***Renninger***, 163 A.3d at 999 (cleaned up).  In this case, this one sentence of Plaintiff's testimony did not affect the verdict.  It was obvious from the properly admitted evidence that Boghossian did not want Brown involved in the dispute between herself and Kilijian.  Moreover, it was not prejudicial for the jury to learn of Boghossian's statement to Brown.  Accordingly, we conclude that admission of this statement was harmless error.

Appellants argue that admission of deposition testimony given in the underlying lawsuit was inadmissible.  We disagree.  The testimony was admissible under Pennsylvania Rule of Evidence 804(b)(1) which provides hearsay is admissible if the declarant is unavailable and the

> [t]estimony [ ] was given as a . . . lawful deposition, whether given during the current proceeding or a different one; and [] is

---

[12] In the argument section of her brief, Boghossian quotes an extensive part of Plaintiff's testimony that included this statement.  ***See*** Boghossian's Brief at 26.  After that quotation, however, she only objects to her own statement to Brown being admitted at trial.  She does not argue that Plaintiff's testimony regarding what Brown said to her was inadmissible hearsay.  ***See id.*** at 26-27.  Hence, any such argument is waived.  ***See*** Pa.R.A.P. 302(a).

now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Pa.R.Evid. 804(b)(1).

On September 30, 2010, in the competency proceedings, Appellants stipulated that evidence obtained pursuant to the orphans' court's May 6, 2010 order permitting testimony to be gathered outside the Commonwealth of Pennsylvania could include any future proceeding concerning the nexus of facts surrounding the creation of the irrevocable trust. *See* Exhibit P-44, at 3. That stipulation was entered as an order of court. *See id.* at 5. In light of this order, three depositions were taken in Florida. Appellants do not dispute the fact that those witnesses were unavailable to testify at the trial in this case.[13] Instead, they argue that they lacked the opportunity and motive to develop the testimony through cross-examination. Both of these arguments are meritless.

An attorney from the Firm represented Boghossian at all three depositions. *See* N.T., 3/11/11, at 2 (Jackqueline Lowthert at the Michael Striar deposition); N.T., 3/10/11, at 2 (Jackqueline Lowthert at the Toni

---

[13] Boghossian makes the argument in her reply brief that the witnesses were available to testify at trial. *See* Boghossian's Reply Brief at 5. However, it is axiomatic that arguments raised for the first time in a reply brief are waived. ***Okeke-Henry v. Sw. Airlines, Co.***, 163 A.3d 1014, 1019 n.7 (Pa. Super. 2017). Moreover, Appellants did not object to the admission of the depositions at trial on this basis. *See* N.T., 9/23/16, at 179-185. Hence, even if the argument were made in Boghossian's principal brief, instead of her reply brief, the issue would be waived. *See* Pa.R.A.P. 302(a).

Weston-Paulson deposition); N.T., 3/9/11, at 2 (Jackqueline Lowthert at the Adam Karron deposition). Hence, Appellants had an opportunity to cross-examine all three witnesses. The extent of the cross-examination that they chose to utilize was a strategic decision that they made. Clearly, however, Appellants had the opportunity to cross-examine the three witnesses at their depositions in Florida.

Appellants further argue that even if they had an opportunity to cross-examine these three witnesses, they lacked the necessary similar motive to develop this testimony. Again, we disagree. The three depositions were taken in a case to determine Kilijian's competency. All three witnesses testified that Kilijian was competent at the time she placed most of her wealth in the irrevocable trust. The competency proceeding involved Kilijian's susceptibility to influence and the underlying lawsuit charged defendants with undue influence. Therefore, there was substantial overlap of claims and facts and, thus, motive to fully cross-examine the witnesses. In other words, Appellants had incentive to fully cross-examine the three witnesses during the depositions. The depositions did not explore matters that were unrelated to the competency proceedings. Again, the extent to which they cross-examined the witnesses was a strategic decision that they made. The trial court properly refused to bar Plaintiff from offering these depositions at trial. Accordingly,

we conclude that the trial court did not abuse its discretion by overruling Appellants' objection.[14]

Appellants argue that the trial court erred in sustaining Plaintiff's objections to the following questions to, and answers by, Boghossian:

[Question:] And isn't it true that Blake Boghossian confirmed the facts to Mark Halpern and/or Carmen Finegan[, one of the Firm's attorneys,] that you relayed to Mark Halpern and Carmen Finegan?

* * *

[Question:] Isn't it true that you brought certain individuals to the office to confirm facts that you stated to Mark Halpern?

* * *

[Question:] And you were very upset to Mark Halpern and Carmen Finegan; you cried about that?

[Answer:] Yes. I initially called them from Sunrise[, the assisted living facility Kilijian was living]. I went to visit my aunt and this was the second time. The first time when I went, the Sunrise home did not know who I was and I asked to visit with a Hilda Kilijian. They brought her down. She welcomed me, hugged and kissed, and it was like a nice family reunion. This is the first time I had seen her since she was brought up to Philadelphia from Florida without me knowing. But I was able to find out where she was by calling the homes in the neighborhood where I just took a chance I might be able to find her. The second time I went back, the manager came over. She was very apologetic, and she said I'm terribly sorry

* * *

_____

[14] Appellants also argue that the depositions were inadmissible because they were not given proper notice that the depositions would be offered at trial. This argument is waived because Appellants failed to object on this basis. **_See_** Pa.R.A.P. 302(a); Pa.R.Evid. 103(a)(1)(B).

[Question:] Do you recall a time that you told Mark Halpern that you were present when your sister walked in and kind of tapped your mother on the head and screamed at her at the top of her lungs saying . . . make Lynne --

* * *

[Question:] And you believed she was taken against her will?

[Answer:] Lourdes told me that.

N.T., 9/20/16, at 12-32. Appellants argue that each of these questions went to their state of mind when they instituted the underlying lawsuit and, thus, were not offered for the truth of the matter asserted. We conclude that the trial court did not abuse its discretion in sustaining Plaintiff's objections.

As to the first question, whether or not Blake Boghossian "confirmed" the facts that Boghossian told Halpern is immaterial to determining Boghossian's state of mind. What was at issue in this case was whether Boghossian had a reasonable basis in fact and law for commencing the underlying lawsuit. Appellants were not attempting to elicit information regarding their state of mind. Rather, they were attempting to elicit information regarding irrelevant evidence regarding whether Blake Boghossian "confirmed" facts to Halpern. *Cf. Dean v. Bowling Green-Brandywine*, 192 A.3d 1177, 1182–83 (Pa. Super. 2018) ("We may affirm the trial court's order on any basis, regardless of the reasoning relied upon by the trial court."). The same rationale applies to the second question quoted above.

As to Boghossian's answer to the third question above, whether a member of an assisted living home staff was apologetic to Boghossian was irrelevant when considering Boghossian's state of mind when she instituted the underlying lawsuit or why she continued to maintain the suit long after it became clear that it lacked a basis in fact or law. As to the last two answers, they were offered for the truth of the matter asserted, *i.e.*, to show that Brown and Plaintiff acted against Kilijian's will. They were not offered to show Appellants' state of mind. Accordingly, we conclude that the trial court did not err in sustaining the objections during Boghossian's testimony.

### G. Sufficiency of Damages Evidence

In their final issue, Appellants argue that the evidence was insufficient as a matter of law to sustain the jury's damages award. As noted above, we review the sufficiency of the evidence *de novo* and our scope of review is plenary. **See Tong-Summerford**, 190 A.3d at 659. We must view the evidence in the light most favorable to Plaintiff as the verdict winner. **Krishnan**, 171 A.3d at 891.

The jury awarded Plaintiff $250,000.00 in compensatory damages; $200,000.00 for emotional distress and $50,000.00 for reputational harm. Appellants argue that the evidence was insufficient to support both of these damages awards. These arguments, however, are based on a misapplication of well-established Pennsylvania law. Specifically, Appellants err in viewing

the evidence in the light most favorable to themselves instead of in the light most favorable to Plaintiff.

Appellants contend that Plaintiff failed to prove he suffered emotional distress because he offered only his testimony and not that of third parties and/or medical experts. An *en banc* panel of this Court previously rejected this line of argumentation. **See Cruz v. Princeton Ins. Co.**, 972 A.2d 14, 19 (Pa. Super. 2009) (*en banc*) ("neither impact nor medical documentation of distress related symptoms is necessary to [prove emotional distress in Dragonetti Act cases]"); **see id.** at 19 n.5. This Court explained that because of "the absence of a need to prove physical impact or to introduce medical testimony to establish emotional harm, [a plaintiff may] prove their [damages] by way of any admissible evidence." **Id.** at 19.

Plaintiff testified to the emotional distress he suffered as a result of the underlying lawsuit. For example, he testified that he was worried that he would be investigated by the Disciplinary Board of the Supreme Court of Pennsylvania because of the allegations contained in the underlying lawsuit. N.T., 9/26/16, at 299. He further testified that this worry was exacerbated by the fact that he had just left a large Philadelphia law firm to start his own firm. **See id.** at 297-299. He also testified that even if he were not investigated by the Disciplinary Board, he was worried that competing law firms might learn of the allegations and hinder his new firm from building a book of business. **See id.** at 299. Plaintiff testified he could not "even really

describe the impact of trying to go through this kind of lawsuit with these accusations, you know, when you're trying to start a new venture." *Id.* at 298. Plaintiff also testified he felt "[w]orried" as a result of the lawsuit and starting his own firm. *Id.* at 301. Plaintiff testified that the "physical feeling I had was like having a policeman pull up behind me at night and the bubble is running and your heart starts pounding[.]" *Id.* at 300.

Plaintiff testified extensively about the emotional distress that he suffered as a result of the underlying lawsuit. Because emotional distress was not the tort he pursued, but was only the basis for which he sought damages, under this Court's *en banc* *Cruz* decision, he was not required to offer medical evidence or third-party testimony regarding that emotional distress. Viewed in the light most favorable to Plaintiff as the verdict winner, there was sufficient evidence for the jury to award Plaintiff $200,000.00 in compensatory damages for emotional distress.

We next turn to Appellants' argument that there was insufficient evidence to award Plaintiff $50,000.00 in damages for reputational harm. Contrary to assertions in Boghossian's brief, Plaintiff offered testimony from which the jury could reasonably conclude that competing law firms learned of the underlying lawsuit. Specifically, Plaintiff testified that the court in which the underlying lawsuit was originally filed sent information regarding the case to his old law firm instead of his home address or his new law firm's address. N.T., 9/26/16, at 301. The next day Plaintiff explained that he knew that,

because of these mailings, his old law firm was aware of the claims made against him in the underlying lawsuit. N.T., 9/27/16, at 140. Plaintiff also testified that other large Philadelphia law firms learned the allegations made by Boghossian, through Halpern and the Firm, in the underlying lawsuit. *Id.* at 141.

In addition to reputational harm suffered in the legal community, Plaintiff testified that he suffered reputational harm in the ethnic Armenian community. *See id.* He testified that he knew others in that community were aware of the underlying lawsuit and the allegations contained therein. *See id.* The jury was entitled to consider this testimony in evaluating the reputational harm suffered by Plaintiff.

It is hornbook law that when examining a challenge to the sufficiency of the evidence we must examine the evidence in the light most favorable to the verdict winner. In this case, the jury found in favor of Plaintiff and, therefore, we must view the evidence in the light most favorable to him. When viewed in this light, there was sufficient evidence for the jury to award Plaintiff $50,000.00 in compensatory damages for reputational harm. Accordingly, Appellants are not entitled to relief on their claim that the evidence was insufficient as a matter of law for the jury to award Plaintiff significant compensatory damages.

Appellants' challenge to the punitive damages is based solely on their argument that compensatory damages were unwarranted. They make no

independent argument as to why punitive damages, and the specific amount awarded in this case, were inappropriate. Thus, to the extent Appellants argue the evidence was insufficient as a matter of law to award punitive damages, that argument is waived. *See* Pa.R.A.P. 2101, 2119(a).

## IV. Conclusion

In sum, we hold that Appellants failed to preserve three of their claims for our review. With respect to those issues Appellants preserved, we hold that there was sufficient evidence for the jury to find that the underlying lawsuit terminated in Plaintiff's favor. As Appellants are not entitled to relief on their remaining claims of error, we affirm the judgment entered in favor of Plaintiff.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/19