J-A05017-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| L.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| C.W. | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 493 WDA 2019 |

Appeal from the Order Entered March 1, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD12-002081-017

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    FILED AUGUST 11, 2020

C.W. ("Father") appeals the final Protection From Abuse ("PFA") order entered on March 1, 2019, which directed, inter alia, that he have no contact with L.K. ("Mother") for a period of three months.[1]  We reverse.

The trial court summarized the underlying facts as follows:

> Mother and Father enjoyed a brief relationship in 2008 during which time the parties' child, C.K., was born.  [Since June 2017, Father exercised primary physical custody of C.K., pursuant to a custody order entered in Florida, and Mother received supervised visitation.].
>
>     . . . .

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] While this appeal implicates Father's ability to exercise physical custody of the parties' twelve-year-old daughter, C.K., the final PFA order did not include the child as a protected party.

Mother and Father wed in 2017, but began experiencing marital discord immediately thereafter and throughout 2018. On December 3, 2018, Mother filed a petition for a temporary [PFA] order against Father in which she alleged that both she and C.K. had been the victims of physical and emotional abuse by Father on the days of November 28th, 29th, and 30th, 2018. The Honorable Kathleen R. Mulligan [immediately] granted Mother's temporary PFA [petition] and set a final hearing in the matter to be before the [Honorable Jennifer Satler] on December 12, 2018.

On December 12, 2018, this court was unavailable to conduct the final hearing. By order of court dated December 12, 2018, this court continued the final hearing to be heard on January 14, 2019, this court's next available date. On January 14, 2019, this court heard some testimony from Mother, but due to scheduling conflicts had to continue the remainder of the hearing until another date. This court offered to schedule the matter on its next available date in February, but counsel for Father was unavailable. By order of court dated January 14, 2019, the matter was continued until March 19, 2019, but Father was granted at least four hours of supervised visits with C.K. on Saturdays and Sundays, and at least three hours of supervised visits on Wednesdays. Then, by order of court dated February 22, 2019, this court vacated the portion of its January 14, 2019 order of court continuing the matter until March 19, 2019, and instead re-scheduled the matter to be heard on March 1, 2019.

On March 1, 2019, this court held the remainder of the final hearing, at which point Father presented an "Emergency Petition to Dismiss PFA Petition and ICC Action Against Defendant and Postpone Support Conference/Hearing" ("Emergency Petition"). [He asserted, "The continuation of the temporary PFA over more than 2 months . . . without Father having an opportunity to clear his name and submit the attached information and exculpatory testimony to the court is unconstitutional." Emergency Petition, 3/1/19 at ¶ 44; see also id. at ¶ 48.] Following the hearing, by two orders of court dated March 1, 2019, this court denied Father's Emergency Petition and entered a final PFA order of court against him for the protection of the Mother only that was to expire on June 1, 2019. It is from this order of court that Father appeals.

Trial Court Opinion, 6/11/19, at 1-3 (cleaned up, unnecessary capitalization omitted).

The trial court did not direct Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and none was filed. Father presents five issue for our review.

1) Constitutionality of PFA Law of PA in failing to protect the civil rights of Defendants.

2) Failure of [Pennsylvania] to provide legal services to Defendants in PFA proceedings violates equal protection and right to counsel provisions of the PA and US Constitutions.

3) Restriction of Defendant's rights to care and custody of children without due process.

4) Expenses to Defendant caused by Allegheny County PFA procedures, including loss of work time violates equal protection clause of PA Constitution.

5) Violation of equal protection clause of PA and Federal Constitutions.

Father's brief at 4.[2]

Father's second and fifth issues, which relate to the failure to provide counsel to defendant, are waived because he did not raise them in the trial court. See Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). While Father challenged the constitutionality of the PFA Act on due process grounds relating to the excessive delay between the entry of the ex parte temporary PFA order and

_____

[2] In contravention of Pa.R.A.P. 2119(a), the argument section of Father's brief is not divided into as many parts as there are questions to be argued and it does not align with his statement of questions presented. While Father raises the first issue under the heading A in the argument section, it appears that he argues issues two and five under the heading D. The third and fourth issues seems to correlate to sections B and C, respectively.

the ensuing evidentiary hearing on the final order, he did not assert a right to appointed counsel at any point in the PFA proceedings. Thus, we do not address the merits of that claim in this appeal.

Father's remaining issues, listed as one, three, and four in the statement of questions involved, assert that the PFA Act is unconstitutional as applied in this case because it failed to protect him from undue delay and restricted his custodial rights to his daughter without due process.[3] The claims all implicate the fundamental right of fit parents to make decisions concerning the care, custody, and control of their children, as protected by the Due Process Clause of the Fourteenth Amendment. See Troxel v. Granville, 530 U.S. 57, 65-66 (2000). Accordingly, we address the issues collectively.

———————————————————

[3] Mother filed in this Court a "Motion for Disposition Without Reaching the Merits," which we treat as a motion to dismiss. Contrary to the allegations of waiver that Mother asserts therein, Father preserved these issues by raising them in his March 1, 2019 emergency motion to dismiss the PFA petition and by asserting the custody rights that led the trial court to award him periods of supervised visitation with C.K. on January 14, 2019. In addition, to the extent that Mother asserts that the issues are moot because the final PFA order issued on March 1, 2019 expired on June 1, 2019, this Court has held that issues relating to the delay associated with holding a PFA hearing fell within an exception to the mootness doctrine for issues capable of repetition and apt to elude appellate review. Ferko-Fox v. Fox, 68 A.3d 917, 920-21 (Pa.Super. 2013) (due to effervescent nature of PFA proceedings, questions relating to adequacy of proceedings were capable of repetition and apt to elude appellate review). Finally, as noted in the body of this memorandum, Father was not required to provide notice to the Attorney General of Pennsylvania pursuant to Pa.R.Crim.P. 235 and Pa.R.A.P. 521. See Brown v. Halpern, 202 A.3d 687, 696 n.5 (Pa.Super. 2019) ("Compliance with Rule 521 is only required where a party makes a facial challenge to the constitutionality of a statute."). For all of the foregoing reasons, we deny the motion to dismiss, and address the merits of Father's arguments.

The gravamen of Father's complaints is that the extreme delay in the final PFA hearing deprived him of fundamental due process rights insofar as the court extended the terms of the original ex parte order for three months without establishing good cause. Father's brief at 16-17. He notes that the trial court ordered two of the continuances sua sponte and neglected to provide any reason for the ninety-eight days of delay "other than the press of other duties." Id. at 21-22.

In addition, Father asserts that the protraction of the PFA proceedings constitutes an unwarranted suspension of his liberty without due process, particularly, his parental rights to the care, custody, and control of his daughter, of whom he was granted primary physical custody. Id. at 24. In this vein, he also contends that the combination of the court system's policy known as "one family one judge," which directs the assignment of PFA cases to the family law judge who is overseeing a support, divorce, or custody case that involves the family, and a shortage of judges to hear PFA cases, has caused the system to break down to the detriment of PFA defendants. The crux of this argument is that the excessive delay in this case was untenable because it postponed the resolution of this case by approximately three months. See e.g., id. at 36-37 ("How this sad schedule of events could even begin to comport with the constitutionally-guaranteed principles to Father of due process and an opportunity to be promptly heard before his rights as a citizen are infringed upon is beyond comprehension."). Thus, he opines that

the PFA Act is unconstitutional as applied in this matter from a due process standpoint.

The trial court did not address the merits of Father's argument. Instead, it determined that that the due process argument was waived because Father failed to provide notice of the challenges to the Attorney General of Pennsylvania pursuant to Pa.R.Crim.P. 235 and Pa.R.A.P. 521. However, as Father does not assert that the PFA Act was facially unconstitutional, as opposed to unconstitutional as applied to him in this case, he was not required to provide notice of these challenges to the Attorney General of Pennsylvania pursuant to Pa.R.Crim.P. 235 and Pa.R.A.P. 521. See Brown v. Halpern, 202 A.3d 687, 696 n.5 (Pa.Super. 2019) ("Compliance with Rule 521 is only required where a party makes a facial challenge to the constitutionality of a statute."). Indeed, while the trial court acknowledged that this was an "as applied" argument, it nevertheless declined to address it. See Trial Court Opinion, 6/1/19, at 7 ("Thus, it seems that in his Emergency Petition[,] Father is not so much as challenging the constitutionality of the PFA law, but perhaps alleging the specific circumstances of the case violated his due process rights."). Hence, the record does not sustain the trial court's finding that this issue is waived.

We review PFA orders for an abuse of discretion and apply the identical standard to the court's decision to grant or deny a continuance. Ferko-Fox v. Fox, 68 A.3d 917, 920, 925 (Pa.Super. 2013). "An abuse of discretion is

more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." Id. (quoting Baysmore v. Brownstein, 771 A.2d 54, 57 (Pa.Super.2001)). For the reasons we explain below, we agree with Father's contention that the three-month delay in this case is outrageous, and that the trial court infringed on Father's due process rights by prolonging the proceedings.

The PFA Act is designed to shield a protected party from violence, sexual abuse, or other abuse. Buchhalter v. Buchhalter, 959 A.2d 1260, 1262 (Pa.Super. 2008) (citations omitted). The proceedings are initiated by the filing of a petition pursuant to 23 Pa.C.S. § 6106, and if the petition alleges an "immediate and present danger of abuse to the plaintiff or minor children[,]" the trial court holds an immediate ex parte hearing." 23 Pa.C.S. § 6107(b)(1). The court may enter a temporary PFA order where it finds an immediate and present danger of abuse. 23 Pa.C.S. § 6107(b)(2). As outlined in § 6108(a)(4)(iv), the temporary order cannot alter an existing custody order "unless the court finds that the defendant is likely to inflict abuse upon the children or to remove the children from the jurisdiction of the court prior to the [final] hearing under section 6107(a)." 23 Pa.C.S. § 6108(a)(4)(iv).

At the outset, we reject Father's assertion that the trial court was required to hold an evidentiary hearing prior to altering the existing custody order.

See Father's brief at 26-28. As it relates to child custody, the PFA permits the trial court to enter temporary custody awards in light of the risks that a defendant poses to the child and plaintiff. Contrary to Father's assertion that the trial court cannot alter an existing custody order without a hearing to determine whether he posed a threat to his daughter, the PFA Act permits the court to enter a temporary PFA order that includes, inter alia, an award of child custody. In pertinent part, the statute provides,

> (a)    General rule.— . . . The order or agreement may include:
>
>         . . . .
>
>         (4) Awarding temporary custody of or establishing temporary visitation rights with regard to minor children. In determining whether to award temporary custody or establish temporary visitation rights pursuant to this paragraph, the court shall consider any risk posed by the defendant to the children as well as risk to the plaintiff. The following shall apply:
>
>         . . . .
>
>         (iv) If a plaintiff petitions for a temporary order under section 6107(b) (relating to hearings) and the defendant has partial, shared or full custody of the minor children of the parties by order of court or written agreement of the parties, the custody shall not be disturbed or changed unless the court finds that the defendant is likely to inflict abuse upon the children or to remove the children from the jurisdiction of the court prior to the hearing under section 6107(a). Where the defendant has forcibly or fraudulently removed any minor child from the care and custody of a plaintiff, the court shall order the return of the child to the plaintiff unless the child would be endangered by restoration to the plaintiff.

23 Pa.C.S.§ 6108(a)(4)(iv) (emphases added). Thus, based on a finding of likely abuse or abduction, the PFA Court is authorized to enter a temporary PFA order that supersedes an existing custody order.

The foregoing procedure was implemented in this case. Mother's PFA petition included allegations that Father abused their daughter physically and emotionally, and she requested to amend the existing custody order. See PFA Petition, 12/3/18 at 1-3. The trial court made the finding of likely abuse or abduction, at least implicitly, when it entered the ex parte temporary order protecting Mother and child, and expressly superseded the existing custody order, stating that Father shall have "no contact with the minor [child] pending the Final PFA Hearing." Temporary PFA Order, 12/3/18, at 2.

That the temporary order was entered ex parte is of no moment. The provisions that Father cites in support of his contention that a hearing was required in this case related to situation where the trial court is making an initial determination of custody or supervised visitation in the temporary order, i.e., subparagraphs (i)-(iii), do not apply to this case where Mother sought to supersede an existing order. Mindful that the other subparagraphs expressly refer to a "hearing" and the proviso applicable to this case does not, we decline Father's invitation to create the requirement by implication. The PFA Act is comprehensive legislation, and if the General Assembly intended to require the PFA court to convene a hearing prior to temporarily altering an existing custody order it would have explicitly included the same or similar

language in subparagraph (iv) that it inserted in subparagraphs (i-iii). As it did not, Father's argument fails.

Next, we address Father's claims that the three-month delay violated his due process. Ferko-Fox, supra, is the seminal case addressing delays associated with a trial court's serial continuance of the final PFA hearing. In confronting this issue, we stated that procedural due process is "a flexible concept that calls for such procedural protections as the particular situation demands." Id. at 922 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Section 6107(a) of the PFA Act requires that the trial court commence a final PFA hearing, where the plaintiff bears the burden of proving the allegation of abuse by a preponderance of the evidence, within ten business days of the filing of the underlying PFA petition. That ten-day period is not unyielding, however. For example, § 6107(c) permits the trial court to continue the final PFA hearings in its discretion and enter appropriate temporary ex parte orders to cover the intervening time.[4] See Ferko-Fox v. Fox, supra at 926.

_____

[4] In relation to the continuance of the final PFA hearing, the PFA Act provides:

Continued hearings.—

If a hearing under subsection (a) is continued and no temporary order is issued, the court may make ex parte temporary orders under subsection (b) as it deems necessary.

- 10 -

However, the court's power is not unfettered. See In re Penny, 509 A.2d 338, 340 (Pa.Super. 1986) (evidentiary hearing required within ten days of petition or other exigent action—"continued suspension [of due process], irrespective of motivating factors, cannot be countenanced without judicial limits, subject to substantive or procedural restraint."); Heard v. Heard, 614 A.2d 255 (Pa.Super. 1992) (absent continuance, trial court erred in issuing final PFA order beyond ten-day period set forth in § 6107(a)." Moreover, "[i]n determining whether a hearing pursuant to Section 6107(a) comports with due process, this Court has held that the parties must, at a minimum, have the opportunity to present witnesses, testify on one's behalf, and cross-examine the opposing party and his/her witnesses." Lanza v. Simconis, 914 A.2d 902, 906 (Pa. Super. 2006). As we reiterated in Ferko-Fox, supra at 920, "To meet the special exigencies of abuse cases, acceptable procedures have been fashioned which suspend, temporarily, the due process rights of the alleged abuser and provid[e] for summary procedures for implementation of orders." (footnote omitted).

In Ferko–Fox, the plaintiff filed a PFA petition on March 22, 2011, and the court immediately entered a temporary PFA order pending the final PFA

_____

23 Pa.C.S. § 6107(c). Effective April 10, 2019, §6701(c) was amended to include subparagraphs (2) and (3) concerning the defendant's right to request a continuance in certain situations that did not occur in this case and notice requirements relating to that right. The version of § 6107(c) that we reproduced above is applicable because all of the relevant orders, including the final PFA order, were entered prior to the amendment's effective date.

hearing scheduled for March 28, 2011. Thereafter, the court continued the final hearing to allow the plaintiff to obtain counsel. After the hearing commenced on May 9, 2011, it was continued again until September 28, 2011, because there was insufficient time to complete it. The final order was not issued until November 23, 2011. See Ferko–Fox, supra at 919–20, 925–26.

This Court held that the trial court did not abuse its discretion in continuing the case beyond the ten days provided in the PFA Act because the continuance allowed the plaintiff to retain counsel, whom she tried to engage earlier in the proceedings. Id. at 926. Although we find that the trial court did not abuse its discretion by granting the requested continuance so that Wife could obtain counsel, we must emphasize that the resultant six-month delay between the March 2011 PFA petition and the conclusion of the evidentiary hearing during September 2011 is inexcusable. While we are cognizant of the scheduling difficulties that trial courts encounter on a daily basis, we stress that it is imperative to promptly schedule PFA proceedings in order to effectuate the purpose of the PFA Act and to protect a respondent's significant interest in mounting a defense to the allegations leveled in the PFA petition.

Id. at 926 n.8.

The present case raises identical concerns because the final PFA hearing did not occur for approximately three months. In addition to the other deprivations that Father incurred as result of the delay, which we outline infra, during the entire three-month period, Father was unable to exercise his court-ordered right to primary physical custody of his daughter, although he eventually received twelve hours of supervised custody per week.

Instantly, the resolution of the PFA was twice delayed by the trial court's unavailability due to scheduling conflicts. The final PFA hearing was initially

scheduled for December 12, 2018, but when Father appeared on that date, he was advised that the matter had been continued, sua sponte, without his consultation or consent, until January 14, 2019. Following that one-month delay, the trial court heard Mother's testimony, but ultimately postponed the hearing, again, due to scheduling conflicts, prior to Mother's cross-examination and relisted the case for the next available day that it had designated for PFA hearings, presumably sometime in February 2019. See N.T., 1/28/19, at 41-42; Trial Court Opinion, 6/11/19, at 3. However, when Father's counsel apparently informed the court of a conflict with the designated day in February, the matter was shelved for an additional month and did not resume until March 1, 2019. Meanwhile, on January 28, 2019, Mother filed a petition for contempt against Father, and since he was still subject to the temporary PFA, he was arrested and confined for twenty-five hours prior to posting the $500 bond. The trial court eventually acquitted Father on March 4, 2019.

The trial court's liberal utilization of continuances to avoid scheduling conflicts and the attendant three-month delay in scheduling the final PFA hearing pursuant to § 6107(a) is indefensible. In addition to prolonging the restrictions on Father's liberty during this period, the court effectively suspended his right to exercise primary physical custody of his daughter. Furthermore, Father incurred incremental costs, fees, and lost wages due to the deferrals. Father claims that, between defending Mother's fruitless

contempt petition and attending the piecemeal PFA hearings, he missed five days of employment, which led to his eventual discharge. Significantly, the only timely-held proceeding on December 12, 2018, was hollow and merely continued the matter without Father's input. Likewise, while Father's counsel was unavailable on the one February date that the court offered to hear the case following its subsequent continuance on January 2019, it was unreasonable for the court to postpone the matter until March 2019, when the resolution of this case was already one month beyond the ten-day period outlined in § 6107(a). Tellingly, there is no indication in the certified record that the court attempted to find earlier alternative dates to finish the hearing in January or February before it selected the March date.

The PFA Act does not provide a remedy for the trial court's undue delay between the filing of a PFA petition and the evidentiary hearing prescribed by § 6107(a). In challenging the methodology employed by the Allegheny County Court of Common Pleas, Father seeks recompense, presumably from the Allegheny County Court of Common Pleas. See Father's brief at 37. However, because Father does not support his claim for an unspecified amount of attorney fees with citation to precedential legal authority, no relief is due. In the conclusion of his brief, however, Father additionally requests that this Court reverse the final PFA order. Id. at 43.

As the net effect of these delays was a temporary order restricting Father's parental rights to, and court-ordered custody of, his daughter for

three months, with the final order relating only to Mother being effective for an additional three months, the temporary PFA order was more restrictive of Father's liberty interests than the final PFA order. Thus, insofar as Father suffered actual prejudice in the disallowance of his court-ordered custody rights, we cannot simply dismiss or discount the due process violations that undermine this case as harmless.

While authorized under § 6107, the judicial continuances for what amounts to the trial court's scheduling conflicts and the scarcity of designated "PFA" days on the court's calendar do not justify the delays in this case. As the foregoing delays failed to advance the stated rationale for the PFA Act and needlessly prolonged the restrictions on Father's liberty, custodial rights, and property rights, we reverse the final PFA order entered by the trial court on March 1, 2019.

Order reversed. Motion to dismiss denied.

President Judge Emeritus Bender joins the memorandum.

Judge Pellegrini concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020

- 15 -